CITY OF DENVER v. DEAN.

1. The municipal authorities of Denver must exercise ordinary care in keeping the sidewalks free from defects and obstructions, and liability may ensue from injuries occasioned by failure so to do.

2. Where a city did not construct the sidewalk, and the accident is not occasioned by any act of its officers or agents, before plaintiff can recover he must show that the corporation had notice of the defect causing the injury for a sufficient length of time prior thereto to enable it to cure the defect. Such notice may be actual or constructive.

3. The knowledge of an officer or agent, obtained in the line of his duty, is actual notice to the city.

4. Constructive notice exists where the exercise of ordinary care involves the anticipation of defects that are the natural and legitimate result of use and climatic influences. Such notice also exists where the city has had the means of knowledge for a sufficient time to have cured the defect.

5. The phrase "means of knowledge" is applicable only to visible defects or obstructions, except that it may include also a neglect to anticipate defects naturally arising from use and climatic influences.

6. It is the province of the jury to determine whether or not a certain officer had personal knowledge of the defect causing the injury, and also whether such knowledge was acquired a sufficient length of time previous to the accident.

*Appeal from District Court, Arapahoe County.*

IN August, 1882, the plaintiff, Cecil A. Deane, while walking along the sidewalk on Curtis street, Denver, in daylight, stepped upon the cap covering a coal hole, which tipped under his weight, allowing one leg to pass through, and causing an injury from which serious consequences followed. After suffering great pain for a considerable length of time, he lost almost completely the use of his leg for life. There was nothing in the appearance of the cap or cover to the coal hole, or its surroundings, to indicate danger to a casual or even careful observer. The defect which produced the injury was the failure to properly bolt or secure the cap on the under

side; a matter that would not be discovered except by a careful and minute examination, or by accidentally stepping on one edge of the cap in a particular way, as did Deane, and causing it to tip. The record shows that Deane, at the time of the accident, was exercising reasonable care and caution in passing along the sidewalk. The question of contributory negligence on his part is therefore not relied upon by counsel or discussed in the opinion. There is evidence tending to show that one Lomery, who at the time of the accident was, and for several months prior thereto had been, chief of police of the city of Denver, knew of the defective cap; also evidence tending to show that this knowledge of Lomery was acquired four or five months previous to the accident; that he notified the tenants and instructed them to have the defect cured; that he also mentioned the matter to a policeman whose beat was upon that portion of the street. It is not claimed that the city constructed the sidewalk in question or superintended its construction.

On the 26th of October following the accident, Deane brought this action against the city for damages, relying upon its alleged negligence in failing to have the cap properly secured. He recovered a verdict and judgment, from which judgment the present appeal was taken. The ninth instruction given to the jury by the trial court, which is discussed at length in the opinion, reads as follows: "The jury are instructed that the knowledge of a policeman or chief of police of the city of Denver is not the knowledge of the corporation of Denver, and, unless some other knowledge or notice of the defect in the street was proved, the plaintiff cannot recover. But this is not to be understood as an instruction on the part of the court that the knowledge gained by the chief of police of the city, in pursuance of his duties and employment as such officer, may not have been sufficient to have afforded the city of Denver the means of knowledge, so as to charge it with negligence if it disregarded such means of

knowledge." The remaining essential facts are sufficiently stated in the opinion.

Messrs. F. TILFORD, R. H. GILMORE, J. F. SHAFFROTH and J. C. STALCUP, for appellant.

Messrs. BROWNE and PUTNAM, for appellee.

HELM, J. It was the duty of the municipal authorities of Denver to exercise ordinary care in keeping the sidewalks free from defects and obstructions. The conclusion reached in *City v. Dunsmore*, 7 Colo. 328, with reference to streets, applies with equal fitness to the subject of sidewalks, and the reasons there given need not be restated. A failure to perform this duty might lay the foundation of municipal liability. But since the city did not *construct* the sidewalk, coal hole or cap here in question, and the accident was not occasioned by any act of the city, its officers or agents, before plaintiff could recover damages from it for the injury sustained, he was required to show that the corporation had notice of the defective cap; also that it was in possession of such notice a sufficient length of time before the accident to have cured the defect and prevented the injury. Such notice might have been either actual or constructive.

The ninth instruction given in the case announces two propositions on the subject of notice: *First*, that the knowledge, concerning defects like the one in question, of the police of the city, is not actual notice to the corporation; *second*, that such knowledge, if gained in pursuance of the officer's duties and employment, may be the means of knowledge, so as to charge the municipality with constructive notice. In our judgment both propositions are wrong. Whether a certain matter is in the line of a particular officer's employment is to be determined by construction of the statute or ordinance prescribing his duties; hence such determination is a question of law. Without discussion, but not without careful examination,

we are prepared to hold that the ordinance before us sufficiently charges the chief of police with the care of coal holes and caps, as well as other obstructions, in or upon the sidewalks. Hence the court below should have instructed the jury that, if the officer had personal knowledge of the defective cap, the city should be charged with *actual* notice; and that, if such actual notice existed for a length of time reasonably sufficient to have had the cap properly bolted before the accident, they might find for plaintiff, provided other essential questions of fact were, upon the evidence, resolved by them in his favor. But the knowledge of the chief of police could not, in and of itself, be *constructive* notice to the city; nor could the city be charged with this kind of notice by the communication of such knowledge to others. If information of a latent defect, possessed by the chief of police, were not acquired in the line of his official employment, but were communicated by him to some officer charged with the duty of repairing, or causing to be repaired, such defects, the notice to the city would be actual, and not constructive; while if, in such case, the chief repeated the information to private citizens, or to other officials whose duties, like his, in no way related to the matter, the city would in law be charged thereby with no notice at all, either actual or constructive. 1 Dill. Mun. Corp. note 1, § 237, and cases; note to *Bank v. Whitehead*, 36 Amer. Dec. 189; 2 Dill. Mun. Corp. § 1025, and notes.

There seem to be but two ways in which a municipal corporation can be charged with constructive notice of defects in its sidewalks so as to be held liable for injuries occasioned thereby; there being no municipal responsibility in the original construction, and no affirmative municipal acts through which the defects are produced: *First.* Where an exercise of ordinary care on its part involves the anticipation of defects that are the natural and legitimate result of use and climatic influences. A neglect of the proper officer to make a sufficiently frequent and

careful examination of a particular structure is sometimes held to charge the city with constructive notice, even though the defect be latent. Illustrating this kind of constructive notices are such cases as *Furnell v. City*, 20 Minn. 117, and *Rapho & West Hempfield Tps. v. Moore*, 68 Pa. St. 404, where the respective injuries resulted from decayed stringers under the sidewalk and rotten timbers in the bridge. The timbers were sound when put into the sidewalk and bridge, but both had been in use so long that decay might reasonably be expected. The defects in both instances were only discoverable by a skilled and careful inspection. It is not contended that the principle above stated, underlying this class of cases, is applicable to the case at bar. *Second.* Constructive notice also exists where the corporation has had the *means of knowledge* for a sufficient time to have remedied the defect. The finding of the jury for plaintiff in the case at bar must, under the ninth instruction, have been based upon the proposition that the knowledge of Lomery was means of knowledge to the city, and that the city was thereby charged with constructive notice of the defective cap. It may be that the phrase "means of knowledge" fairly includes cases of neglect to anticipate and prevent certain defects,— cases covered by the foregoing discussion; but, with that exception, we think the phrase applicable only to visible defects or obstructions,— defects or obstructions that are open and notorious; "*so notorious as to be observable by all.*" Shear. & R. Neg. §§ 148, 407, and cases; 2 Dill. Mun. Corp. note 3, § 1026, and cases; *Weisenberg v. City of Appelton*, 7 Amer. Rep. 43, note, and cases. Illustrating the inference of notice through "means of knowledge are cases like that of *Dewey v. City*, 15 Mich. 306, where the injury resulted from an uncovered coal hole, and that of *Mayor v. Sheffield*, 4 Wall. 189, where it was caused by a stump left projecting through the sidewalk.

But it is conceded by both parties to this case that the

defect now under consideration was *latent*. In the undisputed language of the complaint, "there was nothing in the appearance of the coal hole or its surroundings to indicate danger to the most careful observer." Therefore, aside from the fact that the knowledge of Lomery as a city official could not be means of knowledge to the city, it cannot be said that there was anything *else* before the jury to constitute such means of knowledge.

We are not permitted to hold that the errors of the court in the ninth instruction were without prejudice to appellant. Though, under a proper statement of the law, the jury might perhaps have found the city charged with actual notice, it is not for us to say that such *must* have been their conclusion. It was their province to determine whether or not the chief of police did have personal knowledge of the defective cap; and also whether such knowledge, if found to exist, had been acquired a sufficient length of time previous to the accident. 2 Dill. Mun. Corp. § 1026. It does not necessarily follow, because the jury, under the law as submitted to them, found from the conduct and declarations of Lomery and others that the city had means of knowledge, and therefore *constructive* notice, that, under a proper instruction, they would have Lomery possessed of adequate information for a sufficient period to charge the city with *actual* notice.

For the errors mentioned, judgment must be reversed, and it is unnecessary to discuss the remaining assignments.

*Reversed.*