[No. 4202.]

## The City of Denver v. Hyatt.

1. Cities and Towns—Negligence—Defective Sidewalks—Notice—Pleading.

In an action against a city for damages for personal injuries caused by a defective sidewalk a complaint which alleges that the defect was plainly visible and existed for more than two months prior to the accident is sufficient to charge defendant with constructive notice of the defect and a demurrer on that ground should be overruled.

2. Cities and Towns—Negligence—Defective Sidewalks—Evidence—Street Lights.

In an action against a city for damages for personal injuries caused by a defective sidewalk where the accident occurred at night, evidence that there was no light at the intersection of the streets adjacent to the defective sidewalk was competent and admissible to show that at the time of the accident the defect was not visible, as tending to prove that plaintiff was in the exercise of due care.

3. Instructions—Exceptions—Appellate Practice.

Trial courts, in allowing exceptions to instructions, should require counsel, at the time of taking them, to briefly point out wherein they are erroneous, but where the instructions are paragraphed and numbered an exception in form, "To the giving of instructions requested by plaintiff and to each and every of said instructions, the defendant by his counsel then and there duly and severally objected and excepted," if allowed, will be considered by the appellate court.

4. Cities and Towns—Negligence—Defective Sidewalks—Notice—Instructions.

In an action against a city for damages for injuries caused by a defective sidewalk, mere notice, on the part of defendant, of the existence of the defect would not be sufficient to render it liable, but its negligence would depend on its failure to exercise reasonable diligence in repairing such defect after knowledge of its existence. An instruction which in substance stated that notice of the defect would be sufficient

28 129
29 533

28 129
31 300

28 129
18a 146

28 129
33 427
19a 469

28 129
d20a 85
f20a 251
20a 392

to establish defendant's negligence is erroneous, but where the uncontradicted evidence shows that the defect was plainly visible and had existed for so long a time as to clearly establish negligence in failing to repair it, the error was without prejudice.

5.  INSTRUCTIONS—MEASURE OF DAMAGES.

Where in an action for damages for personal injuries occasioned by defendant's negligence, the evidence was undisputed that plaintiff from the time of the injury down to the trial of the cause was wholly incapacitated from performing any labor whatever and that she would probably be prevented from performing any labor whatever and that she would probably be prevented from performing her duties as nurse for some time to come, and that her abilities in this respect might be more or less impaired in the future, an instruction that, in estimating plaintiff's damage, the jury should take into consideration her loss of time resulting from the injuries and also the loss of time, if any, she would be compelled to sustain in the future, as well as her impaired ability to earn money in consequence of the injury both past and present, and that the amount of earnings lost in consequence of the injury were proper elements to consider in estimating the amount of damages, was not objectionable as authorizing the jury to assess double damages by directing them to award damages for both loss of time and impaired ability to earn money, covering the same period.

6.  NEGLIGENCE — DAMAGE — INSTRUCTIONS — AGGRAVATION OF PRE-EXISTING DISEASE.

In an action for damages for personal injuries occasioned by defendant's negligence, where it appeared that since the accident plaintiff had suffered from latent disease of internal organs and it did not clearly appear whether or not the disease was caused by the accident, an instruction that states, in effect, that if plaintiff was pre-disposed to a disease which was aggravated or accelerated by reason of the accident, she was entitled to recover the damages necessarily resulting from such aggravation or acceleration, was proper. And a statement in such instruction that the jury should take into consideration any pre-disposition to disease aggravated by the injury "both in the determination of your verdict and in estimating the amount of the plaintiff's damages" is not erroneous as informing the jury that the determination of their verdict depended upon this fact instead of the negligence of defendant, although it would have been better to have limited it to the question of estimating the amount to be awarded.

7.  NEGLIGENCE—EVIDENCE—INTERNAL INJURIES.

In an action for damages for personal injuries caused by defendant's negligence where it appeared from the evidence that prior to the accident plaintiff was a healthy and vigorous woman and had never

suffered from a deranged condition of any internal organs and that shortly after the accident she was affected internally and at the time of the trial was suffering severely from some internal difficulties which were of such a serious nature as to render her practically helpless, but it was not clear what internal organs were affected and the physicians called did not agree as to what the trouble was nor as to its proximate cause, one physician giving as his opinion that the condition was caused by the accident and none of them stated that it was not, but that they had never known such condition due to an accident and that the condition was not necessarily attributable to the accident, the evidence was amply sufficient to warrant the jury in the conclusion that the deranged internal condition was caused by the accident.

8.    CITIES AND TOWNS—NEGLIGENCE—DEFECTIVE SIDEWALKS—QUESTION FOR JURY.

In an action against a city for damages for injuries caused by a defective sidewalk where the defect was a break or hole about 20 inches long and of an irregular width averaging about three inches, the question as to whether or not it was such a defect that a failure to repair would constitute negligence was a question for the jury and a non-suit on that ground was properly denied.

9.    JURIES—VERDICT—CONSTITUTIONAL LAW.

The act of 1899 (session laws 1899, page 244) providing that in all civil cases tried by a jury a verdict may be returned by three-fourths of the number of jurors sitting in such case is in contravention of section 23 of the bill of rights and is unconstitutional and void.

*Appeal from the District Court of Arapahoe County.*

This action was commenced by appellee, as plaintiff, to recover from appellant, as defendant, damages for a sprain of her right ankle and back, impairment of her sight, and severe internal injuries, resulting, as it is alleged, from a fall caused by a defective sidewalk. From a verdict in her favor the city appeals.

Regarding the time and place of accident, and the period for which the defect in the sidewalk existed, the complaint, *inter alia*, alleged "That on or about the second day of May, 1899, and for more than two months next prior thereto, there existed in said sidewalk, along the north-east side of said Twenty-eighth street * * an open, unprotected and dan-

gerous hole, about 20 inches in length and 4 inches in width."
To this complaint the city filed a general demurrer, which was
overruled. The accident occurred at night. Plaintiff stepped
into the hole in the sidewalk in such way that her foot be-
came fastened, which caused her to fall. She testified that at
the time of the accident there was no light at the intersection
of the streets adjacent to the point where the accident oc-
curred. At the instance of the plaintiff, as appears from
instructions numbered 14 to 19, both inclusive, the court in-
structed the jury, in substance, that a failure on the part of
the authorities of the city to exercise reasonable care to keep
its sidewalks in a reasonably safe condition for travel, was
negligence, which would render it liable for damages to any
person who, in the exercise of ordinary care and diligence,
and without fault on his part, was injured by reason of a de-
fect in the sidewalk of which the authorities had notice, or
which had existed for so long a time previous to the injury
that they, in the exercise of reasonable care, should have
taken notice of such defect, and therefore, if it should ap-
pear from the evidence that plaintiff, without fault or neg-
ligence on her part, received the injuries for which she sued,
by reason of such a defect in the sidewalk as rendered it
dangerous for travel, she would be entitled to a verdict, pro-
vided the city had notice of such defect in either of the ways
above mentioned; that if it appeared from the evidence tha
she had a latent disease of any of her abdominal organs,
which would not have been made manifest except for the
injury sustained by the accident, and that such disease was
aggravated by the alleged injury, it was proper to take these
matters into consideration in determining the verdict and
estimating her damages; that if the issues were found for
plaintiff, she was entitled to recover such damages as would
fully compensate her for the injuries sustained, and which she
would sustain in the future; that in estimating her damages,
her loss of time, if any, resulting from the injury, and also

loss of time which, from the evidence, it appears she will be compelled to sustain in the future, as well as her impaired ability to earn money in consequence of such injuries, both past and future, should be taken into consideration; and that her loss of capacity to perform her duties as nurse, and the earnings which she lost in consequence thereof, are proper elements to consider in estimating the amount of damages to be awarded.

The exceptions to these instructions are in the following language: "To the giving of instructions requested by counsel for the plaintiff  *  *  *  and to each and every of said instructions, the defendant by his counsel then and there duly and severally objected and excepted." The verdict was in the sum of five thousand dollars, which, it is urged, is excessive.

The immediate result of the accident was a sprained ankle and a bruised back. She also claimed at the time of the trial that the condition of certain abdominal organs was attributable to the accident; this condition did not exist prior to the accident, but was manifest shortly afterwards. The evidence of the physicians was to the effect that they could not say positively how or what internal organs were affected; that an exploratory incision would be necessary to ascertain what the trouble was, and even that might not disclose it. One physician testified that in his opinion, her condition internally was caused by the fall. Another physician stated that all of her symptons, excluding the sprained ankle and back, could be traced to other causes than a fall. Another physician, appointed by the court, gave it as his opinion that plaintiff was suffering from a diseased condition of internal organs, the exact nature of which he could not determine, and that he had never known such a condition as she presented, due to an accident; while another physician, also appointed by the court, stated that he was not able to locate her internal injuries to a certainty, and

that her present condition was not necessarily attributable to the fall. Prior to the accident she was an active and healthy woman.

At the close of the testimony the city requested the following instruction, which was refused: "The jury are instructed that, for want of sufficient evidence of negligence on the part of the defendant city, with respect to the alleged defect in the sidewalk, the law of this case is with the defendant, and the verdict should be for the defendant."

The evidence regarding the defect in the sidewalk was to the effect that it was caused by the breaking off, or decay, of a portion of one of the planks of which it was constructed, lying cross-ways; that the opening thus made was about twenty inches in length and about three inches in width. The verdict returned was agreed to by only three-fourths of the number of jurors to whom the cause was submitted. The law which authorizes a verdict so to be returned is as follows:

"Section 1. That hereafter, in all civil cases in courts of record which shall be tried by a jury, not less than three-fourths of the number of jurors sitting in such case may concur in and return a verdict therein, and such verdict shall have the same force and effect as though found and returned by all of the jurors sitting in said case. * * *." Sess. Laws 1899, p. 244.

Section 23, bill of rights, provides: "The right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law * * *."

The errors assigned will be considered under the following heads:

1. The overruling of the demurrer to the complaint.
2. The introduction of testimony.
3. Instructions given.

4. Sufficiency of evidence to sustain the verdict.

5. Instructions refused.

6. Constitutionality of the act permitting a verdict to be returned by three-fourths of the number of jurors sitting in a case.

Mr. J. M. ELLIS, Mr. S. L. CARPENTER and Mr. N. B. BACHTELL for appellant.

Mr. C. M. GARWOOD, Mr. CHARLES H. TOLL and Mr. D. V. BURNS, for appellee.

Mr. BEN B. LINDSEY and Mr. FRED W. PARKS, *amici curiæ*.

Mr. JUSTICE GABBERT delivered the opinion of the court.

1. In support of the demurrer to the complaint, it is urged that the latter is insufficient for the reason that it contained no averment that the city had notice of the condition of the sidewalk at the place where the accident occurred. Notice of such a defect may be either actual or constructive. If the defect, such as is alleged in this case, exists for a sufficient length of time before the happening of an accident therefrom, so that in the exercise of ordinary diligence by its proper officials the existence of such defect could have been ascertained by the city, it is presumed in law to have that notice of the defect which is termed "constructive." *City of Denver v. Dean*, 10 Colo. 375; *Todd v. Troy*, 61 N. Y. 506; *City of Boulder v. Niles*, 9 Colo. 415.

The defect alleged to exist in the sidewalk in question was not latent. On the contrary, it was visible. It is charged that it existed for more than two months next prior to the date of the accident of which plaintiff complains. Certainly that was ample time within which the city, through its

proper officers, should have discovered the defect and repaired it.   The demurrer to the complaint was properly overruled.

2.   The accident to plaintiff occurred in the night time. In order to entitle her to recover, she must have been in the exercise of due care upon her part.   For this reason it was competent for her to show there was no light at the intersection of the streets adjacent to the defective sidewalk, for the purpose of showing the surrounding conditions at that time. Had the light been sufficient to render the defect visible, she might have been guilty of contributory negligence had she not avoided it.   If, on the contrary, it was not visible because of the darkness, it was proper to show this fact, so that the jury might judge of the degree of care which she exercised.

3.   Counsel for appellee contend that the character of the exceptions to the instructions, which we are asked to review is such that they should not be considered.   The instructions were paragraphed.   The object of an exception is to invite the attention of the trial judge to an alleged error in an instruction to which it is directed, and where as in this case, the exception is to each instruction separately, it is sufficient. *Ritchey v. People,* 23 Colo. 314.

We have had occasion more than once to criticise exceptions of this character, but under the practice which has become fixed by repeated decisions, it appears that they are sufficient if allowed in that form.   The trial judge ought to be given an opportunity to review and correct an instruction, if found to be erroneous.   A mere exception, while it challenges the correctness of an instruction, does not point out specifically wherein it is incorrect; so that, in justice to the trial judge, for the purpose of giving him an opportunity to correct erroneous instructions and thus prevent the mischief caused thereby, trial courts, in allowing exceptions to instructions, should require counsel, at the time of taking

them, to briefly point out wherein they are erroneous.

The first objection urged by counsel for appellant to the instructions given, is, that they omitted to state that the defect must have existed such a length of time before the happening of the injury as would give the officers of the municipality sufficient time, by the exercise of ordinary diligence, to repair it; or, stated in substance, that notice of this defect only would be ample to establish that it was guilty of negligence. Mere notice on the part of the city of the existence of the defect in the sidewalk would not be sufficient to render it liable. Its failure to exercise reasonable diligence in repairing such defect after knowledge of its existence would constitute the negligence which would make it responsible. *City of Denver v. Dean, supra; Todd v. Troy, supra.*

Were it not for the undisputed evidence on the question as to the length of time this defect existed before the accident to plaintiff, the instructions complained of would be serious error. We find, however, from an examination of the record, that all the witnesses who testified on this subject state positively that the defect had existed for from one month to a year and a half prior to that date; that it was plainly visible. It appears, therefore, that the city not only was bound to take notice of this defective sidewalk, but that in the exercise of ordinary diligence upon its part, it should have been repaired before the accident to plaintiff occurred; so that the error in the instructions under consideration was without prejudice.

It is contended on behalf of counsel for the city that under instructions given, the jury was authorized to assess double damages, in that the court directed that plaintiff's loss of time resulting from the injury, loss of time which she might sustain in the future, and her impaired ability to earn money in consequence of such injuries, both past and future, should be taken into consideration in estimating the amount of damages to be awarded, The court also directed the jury

that her loss of capacity to perform her duties as nurse, and the amount of earnings which she lost in consequence of the injuries sustained, were proper elements of loss to be considered in estimating the amount of her damages. The instructions complained of are not as clear and definite as they might be, but when considered in connection with the testimony, we do not believe they are susceptible of the construction that the jury was thereby directed to award damages for both loss of time and impaired ability to earn money covering the same period. The evidence was undisputed, that plaintiff, from the time of the injury down to the trial of this cause, was wholly incapacitated from performing any labor whatever; that from her then physical condition it was probable she would be prevented from performing her duties as nurse for some time to come, and that her abilities in this respect might be more or less impared in the future; so that we think it is fairly deducible from these instructions, when considered in connection with the testimony, that the jury understood she was entitled to recover for her loss of time, both past and future, and her loss resulting from an impaired capacity to perform her duties as nurse after partial recovery; and in determining the amount to be awarded for these items, her ability to earn money prior to the accident in the performance of her duties as nurse should be taken into consideration.

It is also claimed on behalf of appellant that it was error for the court to instruct to the effect that if it appeared from the evidence that plaintiff had a latent disease which would not have been made manifest, or caused her trouble except for the injury sustained by the fall, or that such condition was aggravated by the alleged injury, that they were matters which could be considered by the jury in estimating damages. In support of this contention, *Pullman Palace Car Co. v. Barker*, 4 Colo. 344, is cited. In that case it was determined that the plaintiff was not entitled to recover dam-

ages for an illness resulting from exposure caused by an accident to the car in which she was riding, for the reason that her then physical condition was the immediate and independent cause of such illness, and therefore, not the approximate result of the defendant's negligence. It appears from the evidence that shortly after the accident, and down to the time of the trial, plaintiff had suffered seriously from trouble supposed to have been caused by disease of internal organs. The instruction in question does not pretend to direct the jury that damages should be awarded, except for injuries directly resulting from the accident. They state, in effect, that if plaintiff was predisposed to a disease which was aggravated or accelerated by reason of the accident, she was entitled to recover the damages necessarily resulting from such aggravation or acceleration; in other words, that to the extent she was caused to suffer from the effects of a latent disease above that which she would have suffered had it not been for the accident, she was entitled to recover. The sidewalks of the city are for the use of those with organic predisposition to disease as well as for the healthy and robust, and any injuries which the former may sustain by reason of defects in such sidewalks, which result in aggravating an already diseased condition, are results for which the city must respond, if otherwise liable. *Stewart v. Ripon*, 38 Wis. 584; *Baltimore City R. Co. v. Kemp*, 18 A. & E. R. R. cases, 220; *Terre Haute, etc., R. Co. v. Buck*, 96 Ind. 346; *Brown v. Chicago M. etc., R. Co.*, 54 Wis. 342; 5 A. & E. Enc. Law, 1 Ed. 43.

It is also urged that the statement in this instruction that the jury should take into consideration, "both in the determination of your verdict and in estimating the amount of the plaintiff's damages," any predisposition to disease aggravated by the injury, if such appeared to be the fact, is erroneous for the reason that the jury may have understood therefrom that the determination of the verdict

depended upon this fact, instead of the negligence of the city. This is not fairly deducible from the statement complained of, although it would have been better to have limited it to the question of estimating the amount to be awarded. Notwithstanding the negligence of the city, plaintiff could not recover unless she had suffered damages, and therefore, in determining whether the verdict should be for or against her, it was proper to consider what injuries, if any, she had sustained from the source indicated.

4. It is claimed on behalf of appellant that the verdict rendered is excessive, unless the evidence is sufficient to warrant the conclusion that plaintiff suffered internal injuries by reason of the accident. The evidence is clear that at the time of the trial she was suffering severely from some internal difficulties which were manifest for the first time shortly after the accident. These troubles were of such a serious nature as to render her practically helpless. What particular internal organs were affected is not clear. The physicians called do not agree upon this proposition, neither are they a unit as to what may have been the proximate cause of this condition. One of the physicians called gave it as his opinion that her internal condition was caused by the fall; none of the others stated directly that it was not, but stated that they had never known such a condition as she presented due to an accident, or that such condition was not necessarily attributable to the accident. It appears from other evidence that plaintiff, prior to the accident, was a healthy and vigorous woman, and had never suffered from a deranged condition of any internal organs prior to that time; that shortly after the accident, she was affected internally. This fact, in connection with the testimony of the physicians, we think, is amply sufficient to warrant the conclusion by the average layman, that the deranged internal condition which she manifested at the trial, and which had existed a long time prior thereto, was caused by the fall.

5. Counsel for the city predicate error on the refusal of the court to peremptorily instruct the jury to return a verdict for the defendant upon the proposition that the shape and size of the break in the sidewalk which caused the injury was such that the city was not negligent in failing to repair it. It was about twenty inches in length, and of an irregular width, averaging about three inches. It is not every defect in a sidewalk which can be made the basis of an action for an injury occasioned by an accident resulting therefrom. The defect must be such that a reasonably prudent person would anticipate danger from its existence. Its character must be determined in this respect, like any other question of negligence. If it is of such a nature that different minds might honestly draw different conclusions as to its liability to cause an accident, and the dangers which might reasonably be anticipated from its existence, the question of whether or not it is negligence for a municipality to not repair or remove such a defect is a question which should be left to the jury. *Beltz v. Yonkers,* 148 N. Y. 67; *Lord v. Refining Co.,* 12 Colo. 390; 2 Thompson on Negligence, 1236; *Ry. Co. v. Martin,* 7 Colo. 592; Sherman & Redfield on Negligence, § 11.

Applying this rule to the evidence regarding the character of the defect which caused the accident, we think it was proper for the jury to determine whether the failure on the part of the city to repair it for this reason was negligence or not.

6. The particular reason urged by counsel for respondent against the constitutionality of the jury act of 1899, is, that the essential feature of unanimity in the rendition of a verdict as established by the common law is preserved by the constitution of the state. We have been greatly aided in the determination of this question by the able brief filed by counsel as *amici curiæ,* who, although favoring the law, have fully presented the question in all its different

phases. We have also had recourse to the concise, but logical, brief and argument of the assistant attorney general, which he furnished the chairman of the senate judiciary committee of the last general assembly, in response to an inquiry from that committee regarding the constitutionality of the act in question, and in which he expressed the opinion that the act would not be constitutional. It is urged that the provision of the act, permitting a verdict by a less number than the whole is a wise one, and coincides with the views of eminent jurists and others on this subject; and that in this advanced age we should no longer cling to what is termed by some that relic of barbarism and superstition which requires that a verdict must be unanimous. Whether the innovation is wise or not can in no manner aid in the solution of the question presented. The sole inquiry is, does the act conflict with the constitution of the state?

The judiciary can only arrest a statute which is unconstitutional. As said by Judge Cooley, "It cannot run a race of opinions upon points of right, reason and expediency with the lawmaking power." Cooley on Constitutional Limitations, 5th Ed. 202. The tendency of recent years has been to attempt to remedy existing conditions by legislative acts having in view this worthy object. The result has been that many laws, wise and beneficent in character, when tested by the constitution, have been declared invalid, solely because of their conflict with that paramount law. Under our system of government, the source of all power is from the people themselves. In their sovereign capacity the people of this state have adopted a constitution which is intended to place prescribed limitations upon the different branches of the state government, and any law which conflicts with their authority as thus manifested is unconstitutional, no matter what its object may be, for the obvious reason that if upheld, a principle would be established whereby a constitutional barrier would be removed which would permit legisla-

tion on the same line that might be exceedingly unjust and oppressive. It is no argument to say that the legislature in its wisdom would not pass laws other than those which were beneficial, because the test must always be, when the ques-. tion is raised, does an act conflict with the constitution of the state?

The origin of the right of trial by jury in civil actions as recognized and established by the common law, is involved in mystery. It has existed for centuries, and is essentially an Anglo-Saxon institution. Why its number, the necessity of unanimity, and other features became fixed at common law, is not clearly known, but these requisites have always been an object of deep interest, and any encroachment upon them has been regarded with jealousy. *Parsons v. Bedford*, 3 Peters, 441; 8 Curtis, 474.

It is a privilege which the English-speaking race has come to look upon as a birthright—so much so, that the English colonists settled here with a deep-rooted regard for it. This is evidenced from the fact that all that has been preserved of the legislation of Plymouth Colony for the first five years of its existence is, "That all criminal facts, and also all manner of trespasses and debts, between man and man, shall be tried by the verdict of twelve honest men, to be empaneled by authority in form of a jury, upon their oath." 1 Palfrey's New England, 340; Proffatt's Jury Trial, § 82.

Ever since the formation of our government, it has been guarded with the utmost care. Its omission from the federal constitution at the time of the adoption caused much comment and dissatisfaction—so much so, that the first congress proposed an amendment which was adopted, and which provided that "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law." Seventh Amend-

ment.

An examination of various state constitutions (except Wyoming and our own, the provisions of which on the subject are identical, and also except Louisiana) discloses the fact that in thirty one of the states the right has been preserved inviolate, as it existed at common law,—except in a few instances, the amount in controversy and the character of the action is the criterion measuring the right to a trial by jury. In eleven of the states the right is modified in one or more of the following features: The legislature is authorized to reduce the number, the constitution provides for less than the common law mumber, that a certain proportion may find a verdict, or the legislature is empowered to provide for a jury of less than twelve.

It will be observed that although the people in some instances have adopted constitutional provisions whereby the right as it existed at common law has been greatly modified that in no instance have they empowered the legislature to entirely abrogate this right, but have carefully indicated what modifications might be made, or have made them direct. That it has been so carefully guarded was noticed by Judge Caldwell, in a recent address in which he said: "While trial by jury was an undoubted heritage of the people of this country, they were unwilling that such a supreme and vital right should rest on the unwritten or common law. They were stern and inflexible in their demand that the right should be anchored in the constitution in terms so explicit and peremptory as to make any evasion or denial of it impossible, except by overthrowing the constitution itself. When the several provisions of the constitutions are read in connection, we are amazed at their fullness and completeness. No more resolute and inexorable purpose to accomplish a particular end ever found expression on paper." (The American Lawyer, January, 1900, p. 9.)

In considering this question the remarks of the court, in

*Work v. State,* 2 Ohio St. 296, are peculiarly applicable:. "An institution that has so long stood the trying tests of time and experience, that has so long been guarded with such scrupulous care, and commanded the admiration of so many of the wise and good, justly demands our jealous scrutiny when innovations are attempted to be made upon it."

The language of the bill of rights relating to juries in civil actions is, that "A jury in civil cases in all courts    *    * may consist of less than twelve men, as may be prescribed by law." So far as the constitution of the state is concerned, the authority of the legislature within its sphere is supreme, except as limited by that instrument. *People v Fleming,* 10 Colo. 553; *People v. Wright,* 6 Colo. 92; *People v. Rucker,* 5 Colo. 455; *People v. Richmond,* 16 Colo. 274. Such inhibition may be express or by necessary implication. *People v. Wright, supra;* Cooley's Constitutional Limitations, 5th ed. 208; *Page v. Allen,* 58 Pa. St. 338.

There are no express words limiting the authority of the legislature with respect to juries in civil cases, and the inquiry naturally suggested is, does the language employed impliedly limit the legislature to the one act of providing for a jury of less than twelve? Unless it does, the only conclusion which can be reached is, that with respect to juries in civil cases no limitation whatever is imposed upon the legislature by the constitution of the state, and that it may pass any law on the subject, or take away the right entirely. This serves to illustrate how far reaching a constitutional question may be. Constitutional inhibitions, arising by implication, are as effective as though couched in express language—*Page v. Allen, supra.* To illustrate this proposition in a manner suggested by the last authority: the executive power of the state, according to the constitution, is vested in a governor; the legislative, in a senate and house of representatives. It would clearly violate these provisions of the constitution if the general assembly should provide

for the election of two governors or two senates and houses of representatives, yet it would be unconstitutional only by implication, there being no express prohibition on the subject.

The constitution is to be understood and interpreted in its plain, untechnical sense—*Page v. Allen, supra.* It is a canon of construction that effect must be given every part of the language employed in a law, unless to do otherwise is clearly justified, and the same rule forbids the rejection, as meaningless or superfluous, of any sentence or clause of a written law. Endlich's Interpretation of Statutes, § 23. Applying these principles, what is the plain meaning of the section of the bill of rights under consideration? The legislature was granted authority to pass a law which might provide for a jury in civil cases consisting of less than the common law number. If it was intended to vest the legislature with supreme control over the subject of juries in civil actions, why grant authority to provide for the number only, instead of employing language which would remove all restrictions whatsoever? To hold that such grant of authority removes all restrictions would be a construction which renders the language employed superfluous; in fact, would leave it without any effect whatever; whereas, if the intention was to preserve the right in all respects, except as to number, every word employed is given full force, meaning and effect; so that, reading the section and applying to the language employed its usual significance, and bearing in mind the doctrine of implication, the conclusion is irresistible, that a fair construction of the section is, that thereby the right of trial by jury in civil cases, as provided by the common law, is preserved in all its essentials, except the one of number. The constitution being but a limitation upon the authority of the legislature, it was wholly unnecessary to make any provision on the subject of trial by jury in civil cases, if it was the intention to adopt a constitution which

placed no restrictions upon the power of the legislature to enact laws regarding that right. Having mentioned it, the plain inference is, that thereby it was to be preserved in the modified form designated.

It is a familiar maxim of the law, that the mention of one thing is the exclusion of the other. This maxim, however, is only applicable under certain conditions, to determine the intention of a law which is not otherwise manifest, one of which is, that if that which is expressed is creative, then it is exclusive—Sutherland's Statutory Construction, § 325. Applying this maxim to the section of the bill of rights in question, the same conclusion is reached. The authority to reduce the number of jurors from twelve is thereby created, and in the absence of any express declaration of the further intention regarding trial by juries in civil actions, it follows that the legislature was granted no other authority than this, and impliedly, that all other rights of trial by jury in civil actions were reserved.

It is significant to note that Sec. 23 of the bill of rights as originally prepared read as follows: "The right of trial by jury as heretofore enjoyed, shall remain inviolate, but a jury for the trial of criminal cases in courts not of record may consist of less than twelve men, as may be prescribed by law * * *." The committee on revision recommended that it be changed to its present form, which recommendation was adopted. As originally drafted it is clear that the right of trial by jury was expressly reserved with all its essential features, with the one exception that in criminal cases in courts not of record, a jury might consist of less than the common law number. After the work of the convention was completed, a committee of that body was appointed to prepare an address to the people, informing them of its salient features. In that address it was stated: "The petit jury system has been so modified as to permit the organization of a jury of less than twelve men in civil cases, thereby materially reducing

the expenses of our courts." This language, especially when taken in connection with the section under consideration as originally framed, clearly expresses the plain import of the words therein employed, and indicates that it was the intention to preserve the right of trial by jury in civil cases with all its essentials, except as expressly modified.

Wyoming has a constitutional provision identical with sec. 23 of our bill of rights. The supreme court of that state, in *First National Bank v. Foster*, 61 Pac. 466, has recently held that a jury act similar to our own is unconstitutional. From the opinion of Mr. Justice Corn in that case, in construing the section of the bill of rights relating to jury trials, we quote the following:

"In civil cases the language is also express as to the matter of number,—one of the three essentials of a jury trial at common law,—and the legislature is empowered to provide by law for juries consisting of less than twelve. There is no room for construction; but there is no specific mention in the section, or anywhere in the constitution, of the third essential of unanimity. Is it then to be deemed a matter unprovided for, a right not preserved, leaving the legislature at full liberty to enact such laws upon the subject as it may deem proper, unrestrained by the constitution? We do not think so. The whole section must be construed together. The subject of it is the right of trial by jury, and we think the intention of the framers reasonably appears to have been to preserve the right inviolate in criminal cases, and to point out by way of permission to the legislature, wherein the common law right might be invaded by statute in civil cases. * * * There is no other reasonable construction, for if a rule is to be applied, that the legislature have power to enact any laws upon the subject, unless prohibited in express language, then they may entirely abolish the right and practice of trial by jury in civil cases, for they are not expressly prohibited from so doing; yet there ap-

pears nowhere in the constitution any intention to abrogate the right, or to substitute any other mode of trial; but the form of statement, when viewed in the light of the surroundings, makes it manifest that the intention was to preserve the right."

We have been referred to decisions of this court wherein language is employed which might indicate a conflict with the conclusion reached in this case. In *Houston v. Wadsworth*, 5 Colo., 213, the question presented was, whether or not the provision of the code was constitutional which authorized a reference when the trial of an issue of fact required the examination of a long account on either side. It was held that no constitutional right was invaded by the code provision under consideration. It was said that the constitution imposed no restriction upon the legislature in respect to the trial of civil causes by jury. The decision does not appear, however, to have been based upon this proposition, but, rather, upon the conclusion (following New York), that the character of the action was such that a trial by jury could not be demanded by either party as a matter of right. In *Londoner v. People*, 15 Colo. 557, it was said: "Our constitution does not declare that a jury may either be demanded or denied as a matter of course in the trial of civil cases; hence, this is a proper subject for statutory regulation." The language of an opinion must always be considered in connection with the facts of that particular case, or the character of the action in which it is employed. That action was a *quo warranto* proceeding. At common law a jury could not be demanded as a matter of right in every civil action. *Londoner v. People* was not a cause in which either party was entitled to a trial by jury at common law, and the court, therefore, properly held that in the absence of constitutional provisions with respect to the trial of all civil cases by jury, that it was a proper subject for regulation by statute, which, so far as that case was concerned,

was clearly correct. In *Corthell v. Mead*, 19 Colo. 386, the court said: "Trial by jury in civil cases is not guaranteed by the constitution of this state." That question was not involved; the only one before the court was whether or not a trial before a jury less than the statutory number called before a justice of the peace was binding, and on this subject the court held that in the trial of a civil case by a jury before a justice of the peace, the jury may consist of any number the parties agreed upon or accepted without objection to the number. In none of the foregoing cases was the question of the extent to which the right of trial by jury in civil actions is preserved by the constitution, involved; so that when these cases are reviewed in the light of the questions presented, and the character of the controversy between the parties, they are entirely distinguishable from the case at bar, and do not conflict with the conclusion reached in this case.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and Remanded.*