**[No. 4900.]**

THE DIAMOND RUBBER COMPANY ET AL. v. HARRYMAN.

1. **Damages—Negligence—Personal Injuries—Evidence—Precautions After Accident—Instructions.**

    Evidence that defendant, in an action for negligence, took precaution subsequent to an injury to avoid future injury by removing, changing or repairing the thing by means of which another was injured, is not admissible for the purpose of establishing negligence, since negligence is determined from the facts as they were, and what was or should have been known at the time of the injury, and not by subsequent circumstances; and, where such evidence is admitted on some other ground, it is prejudicial error not to give requested instruction advising the jury that such evidence could not be considered by them in determining the question of negligence.—P. 418.

2. **Practice in Civil Actions—Evidence—Collateral Facts.**

    Evidence of collateral facts which are incapable of aiding in the determination of the main fact in dispute, should be excluded, because such evidence tends to draw the minds of the jurors from the main fact in issue, and to excite, prejudice, mislead and confuse them.—P. 422.

3.   **Same—Damages—Negligence—Other Accident.**

In an action for personal injuries caused by tripping on a projecting iron pipe, evidence that other persons had tripped on the same pipe is inadmissible to show negligence on the part of defendant; nor is such evidence admissible to show that the height of the pipe was such that a man's foot would strike against it, although defendants denied that the pipe was in the sidewalk or that it was high enough to catch a man's foot.— P. 422.

4.   **Practice in Civil Actions—Damages—Personal Injuries—Future Profits—Questions for Jury.**

In an action by a cigar salesman, working on commission and allowed an expense account, for injuries caused by alleged negligent acts of defendant, before evidence of commissions received by him in a previous employment, in which he paid his expenses, could be submitted to the jury on the question of his loss of earnings, it would be necessary to show what his expenses were.—P. 426.

5.   **Same.**

In an action by a cigar salesman for injuries caused by alleged negligence of defendant, evidence of commissions received by him in a previous employment in selling cigars of different brands in a different territory could not be considered in determining his probable future earnings in a new employment on commission.—P. 426.

6.   **Same.**

In an action for personal injuries to a traveling salesman, who had resumed work after his injury, evidence that he was lame and had difficulty in visiting customers and was obliged to employ an assistant, without evidence as to what he earned under such conditions, is not a basis for estimating damages for decreased ability to earn.—P. 427.

7.   **Practice in Civil Actions—Damages—Personal Injuries—Mental Suffering.**

In an action for personal injuries, the evidence shows that plaintiff's leg was broken and had shortened about three-eighths of an inch, that he was able to get about with a cane, and there was a probability of complete recovery. Held, that damages for mental suffering caused by disfigurement, no malice being shown, cannot be recovered.—P. 427.

8.   **Appellate Practice—Harmless Error—Reception of Evidence.**

Where the local agent of a defendant corporation was called as a witness under c. 95, Sess. Laws 1899, authorizing the calling of a managing agent of a party corporation and examin-

ing him as on cross-examination, such error, if any, in calling such agent, is cured where he is afterwards called by the corporation and the same facts brought out on cross-examination.— P. 429.

9.  Pleading—Demurrer—Answer—Waiver.

An objection to a complaint that there is a misjoinder of causes of action and parties, which, if it possesses any merit, appears on the face of the complaint, can only be raised by demurrer; and if overruled, such question is waived by answering to the merits.—P. 430.

10.  Practice in Civil Actions — Instructions — Invasion of Province of Jury.

In an action for injuries caused by tripping on a three-eighths inch iron pipe reaching a few inches above the sidewalk, near the curb, an instruction that its existence for three and a half months would constitute constructive notice to the city, is erroneous, as, under such circumstances, it was for the jury to determine the question.—P. 430.

11.  Cities and Towns—Torts—Action Against City and Property Owner—Liability.

Where an action is brought against a private corporation for injuries caused by a projecting pipe in a sidewalk fronting its premises and also against the city for permitting it to be there, recovery may be had against such private corporation alone if the facts warrant it.—P. 431.

12.  Same—Cities and Towns—Torts—Notice of Injuries.

A notice to a municipal corporation of injuries sustained, in accordance with § 9, p. 233, Sess. Laws 1893, which sets forth a broken leg only, precludes the recovery of damages against the city for any other injuries.—P. 431.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Frank T. Johnson, Judge.*

Action for personal injuries by Charles B. Harryman against The Diamond Rubber Company and the city and county of Denver. From a judgment for plaintiff, defendants appeal.          *Reversed.*

Mr. Wm. L. Dayton and Mr. Wilbur F. Denious, for appellant The Diamond Rubber Company.

Mr. H. A. LINDSLEY, Mr. H. L. RITTER, and Mr. WM. J. MILES, for appellant city and county of Denver.

Mr. FRED W. PARKS and Mr. C. J. BLAKENEY, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellee, as plaintiff, brought an action to recover damages for injuries sustained through the alleged negligence of appellants, as defendants. A trial of the issues joined resulted in a verdict and judgment for plaintiff, from which defendants appeal.

Plaintiff's right of action was based upon the claim that he was injured by tripping upon, and falling .over, an obstruction placed in the sidewalk by the defendant.company, in front of its place of business in the city of Denver, which obstruction consisted of an iron pipe in the flagging of the sidewalk about six inches from the curb. This pipe was about three inches high, with an arm three inches in length, making what is commonly known as a "goose-neck," and was used to inflate bicycle and automobile tires.

The first error assigned is that the court erred in admitting evidence of the fact that soon after plaintiff's injury the defendant company removed this pipe, or "goose-neck." It is settled in this jurisdiction that testimony that a defendant in an action for negligence took precautions subsequent to an injury to avoid future injury by removing, changing, or repairing the thing by means of which another was injured, is not admissible for the purpose of establishing negligence.—*Colo. Electric Co. v. Lubbers,* 11 Colo. 505; *Anson v. Evans,* 19 Colo. 274; *Zimmerman v. Denver Tramway Co.,* 18 Colo. App. 480; *D. & R. G. R. R. Co. v. Morton,* 3 Colo. App. 155.

Such acts afford no legitimate basis from which to infer that thereby a previous neglect of duty is admitted. A person may have exercised due care with respect to some appliance under his control, and yet, after an injury to another has occurred, and as a precaution to prevent future injuries, may adopt additional safeguards. If he were not permitted to do so, without having such action construed as an admission that he had been previously negligent, the result would be after an injury, to prevent precautions being taken to avoid injuries to others.—Jones on Evidence, § 290. Negligence is determined from the facts as they were, and what was, or should have been, known at the time of an injury, and not by circumstances subsequent thereto.

One of the issues made by the pleadings was whether the defendant company had placed the obstruction in the sidewalk, and for this reason counsel for plaintiff contend that the evidence was admissible for the purpose of showing that this obstruction was under the control of the defendant company. In support of this contention they cite: *Readman v. Conway*, 126 Mass. 374; *Colo. Mortgage Co. v. Rees*, 21 Colo. 435; *Skottowe v. O. S. L. and Utah & N. R. Co.*, 16 L. R. A. 593, 22 Ore. 430; Jones on Evidence, § 290.

They also contend that the testimony was competent for the purpose of showing that the conditions, where the injury to the plaintiff occurred, had changed, and to prove that the "goose-neck" had, in fact, existed. In support of this contention they cite: *Choctaw, O. & G. R. R. Co. v. McDade*, 191 U. S. 64; *Kuhns v. The Wis., I. & N. Ry. Co.*, 76 Ia. 17.

Conceding, but not deciding, that the testimony in question was competent for the purposes claimed by counsel for plaintiff, that did not render it competent to establish negligence on the part of the de-

fendants. By an instruction given the question of whether or not the "goose-neck" was dangerous to the safety of persons traveling along the sidewalk in the vicinity of where it was located, was submitted to the jury. If this was a question which it was the province of the jury to determine (and no claim to the contrary is made), then it was prejudicial error to permit any evidence to go to the jury tending to prove negligence of the defendants which was not competent for that purpose. The defendants requested an instruction to the effect that in determining whether or not the defendants were guilty of negligence, they must not consider the testimony that the "goose-neck" was removed after plaintiff's injury. This should have been given, for the reason that, as stated, if it be conceded that the testimony which the defendants sought to have excluded from the jury in determining the question of negligence was competent under the issues made by the pleadings for the purposes claimed by counsel for plaintiff, it should have been so limited, or, at least, the jury should have been advised that it could not be considered in determining the question of the negligence of the defendants when an instruction to that effect was requested.

Counsel for plaintiff say that the instruction requested was objectionable because its wording was such that the effect would have been to take away from the jury the question of whether or not there was a "goose-neck" in the sidewalk on the day plaintiff was injured, and whether the defendant company had placed it there and was responsible for its presence at the time of plaintiff's injury. Perhaps it is true that the instruction could have been more carefully worded, so as to have more definitely called the attention of the jury to the proposition that the removal of the "goose-neck" subsequent to plain-

tiff's injury was not to be construed as an admission that it was dangerous to persons traveling along the sidewalk in its vicinity. If it was faulty in this respect, however, the plaintiff was not thereby prejudiced; but, on the contrary, it was detrimental to the defendants by not being sufficiently definite. By the answers filed the placing of the "goose-neck" in the sidewalk by the defendant company was denied; but, at the time the evidence of its removal was introduced it had been admitted by the agent of the defendant company that it had been placed there by his direction, so that at the time this testimony was introduced there was no issue, so far as the evidence was concerned, as to whether the defendant company had placed it in the sidewalk, but the important question was, whether it was so fraught with danger that placing and maintaining it there was negligence; consequently, if the instruction was not as definite as it should have been, it would not have had the effect of withdrawing from the consideration of the jury the testimony bearing upon the question of the "goose-neck" having been placed in the sidewalk by the defendant company, and that it was under its control on the day plaintiff was injured.

The next error complained of by counsel for defendant company is, that testimony from other persons that they had tripped upon the "goose-neck" was admitted. When this testimony was offered, one of counsel for plaintiff stated:

"We desire to show by this witness and others the fact that this man and others have stumbled over this very projection, and it is evidence of the fact of negligence on the part of the defendant company."

Testimony that other persons had tripped upon this "goose-neck" was clearly not admissible for the purpose of establishing negligence of the defendants,

or that the "goose-neck" was dangerous.  If the fact that others had tripped upon the obstruction could be shown for the purpose of establishing negligence, then there would necessarily be as many distinct issues injected into the case, as there were persons called as witnesses who had passed over the sidewalk in the vicinity of the "goose-neck."  The care they had exercised and the conditions under which they had tripped upon the obstruction would be a subject of inquiry.  If such evidence was admissible, then it would be proper to show that persons had passed along the sidewalk and had not tripped upon the obstruction; and, again, the care they had exercised and the conditions under which they had passed by the "goose-neck" could be gone into; and thus the case would be confused by a great number of collateral issues which would not aid in determining whether or not the obstruction was dangerous.  Evidence of collateral facts which are incapable of aiding in the determination of the main fact in dispute, should be excluded, because such evidence tends to draw the minds of the jurors from the main fact in issue, and to excite, prejudice, mislead and confuse them.  The character of the obstruction was susceptible of proof.  Such proof was made; and whether or not the "goose-neck" was dangerous was to be determined by the jury from these facts, and not from whether others had passed along the sidewalk where it was located without being injured thereby, or had suffered an injury therefrom.  That the testimony in question was not competent to prove negligence of the defendants is supported by many authorities, from which we cite:  *Hubbard v. And. & Ken. R. R. Co.,* 39 Me. 506; *Collins v. Inhabitants of Dorchester,* 6 Cush. 396; *Hudson v. C. & N. W. R. R. Co.,* 59 Ia. 581; *Temperance Hall Assn. v. Giles,* 33 N. J. Law 260; *Kidder v. Inhabitants of*

*Dunstable,* 11 Gray 342; *Phillips v. Town of Willow,* 70 Wis. 6; *Branch v. Libbey,* 78 Me. 321; *Ramsey v. Rushville & M. G. R. Co.,* 81 Ind. 394; *Hodges v. Bearse,* 129 Ill. 87.

But counsel for plaintiff say that the testimony under consideration was admissible under the limitation stated by the court in ruling upon the objection to its introduction. The court, in passing upon the objection, stated, in substance, that the testimony was proper to establish, as a substantive fact, that the "goose-neck" extended such a distance above the sidewalk that a man's foot would strike against it. Counsel for plaintiff insist that this limitation rendered the testimony admissible for the reason that the defendants, by their answer, denied that the "goose-neck" was in the sidewalk, and denied that it was high enough for plaintiff to catch his foot under it, and had also introduced evidence to show that the "goose-neck" was but an inch or an inch and a quarter above the curb, and, therefore, it was impossible for the plaintiff or any other person to catch his foot under it. We do not think it was admissible for the reason indicated by the court. The manner of its construction, for the purpose of determining whether or not it was dangerous, was the testimony for the jury to consider, and not whether others had stumbled against it. If testimony of that kind was proper for the purpose of establishing negligence of the defendants, then innumerable collateral issues would be raised for the same reasons indicated in disposing of the previous question determined. Clearly, for the reasons already given, it was not proper to establish negligence, and the jury should have been so advised, by an instruction to that effect which was requested on the part of the defendants.

Error is assigned on the admission of testimony

to prove damages sustained by plaintiff resulting from his inability to work while recovering from his injury, and his impaired abilities in this respect in the future. At the time of his injury plaintiff was engaged in selling cigars on commission for Dixon, Niles & Moser Co., and had been for about four days. For the period of something like four years prior to his engagement with the firm for which he was working at the time of his injury, he had been employed by The Morey Mercantile Company in the same capacity. For three years of this period evidence of the amount paid him in the way of commissions by The Morey Mercantile Company was introduced. It appears that his commission was 40 per cent. of the profits on the goods he sold. From these profits he was required to pay his own expenses. By his contract with Dixon, Niles & Moser Company he was also to receive 40 per cent. of the profits, and was allowed an expense account. What his expenses were while engaged with The Morey Mercantile Company was not shown, neither was there any testimony as to what amount was to be allowed him in the way of expenses by the firm with which he was engaged at the time of his injury. Plaintiff was able to resume his occupation about the first of September subsequent to his injury, and from that date down to the time of the trial of the case, was engaged in selling cigars under the contract which he had entered into just previous to being injured. There was no proof touching the amount of his earnings during this period. Under his new contract part of the territory he was to work in was different from that under his former employment, and there was a difference in some of the brands of cigars which he was employed to sell. The court instructed the jury that in estimating plaintiff's damages they could take into consideration his probable earnings

while recovering from his injury, less the amount actually received by him during such time from his employers, and also his decreased ability to earn money in the future.

Counsel for defendant say that the evidence of the amount paid by The Morey Mercantile Company was not competent, because the profits which the plaintiff might realize under his contract of employment were too uncertain and speculative to be the subject of recovery. We shall not undertake to determine whether or not prospective profits in the way of commissions are too uncertain and speculative to be recovered in an action for damages caused by an injury such as plaintiff sustained, because it is evident, for other reasons urged by counsel, that there was not sufficient testimony upon which to submit to the jury the question of his loss of earnings, either past or future, and that instructions requested by defendant on that subject should have been given.

At the conclusion of the testimony defendant requested instructions to the effect: (1) that evidence of the amount of commissions received by plaintiff from The Morey Mercantile Company should not be considered, because it appeared he was obliged to pay his own expenses from such commissions, and there was no evidence as to what these expenses amounted to; (2) that this testimony was not competent, because evidence of what plaintiff had earned in the way of commissions under a different contract, with a different firm than the one by which he was employed at the time of his injury, could not be considered in determining his probable earnings under the contract with the firm by which he was employed when injured; (3) that this evidence was incompetent to establish damages for loss of commissions after he resumed work, when there

was no testimony that his earnings subsequent to that date were less than prior to his injury.

What plaintiff made during the period he was employed by The Morey Mercantile Company depended upon the amount of his expenses. There was no testimony on this question, although it appeared that under his contract he was required to pay his expenses. This left the question of his earnings during that period entirely to speculation, because they could be no more than what he was paid in the way of commissions less the expenses he incurred in earning such commissions. If his net profits while working for The Morey Mercantile Company could be considered in determining his loss during the period he was incapacitated from labor, there was no proof of what these profits would be. Only actual damages of the character under consideration, established by the proof of facts from which they may be determined with reasonable certainty, are recoverable, and hence it was necessary for plaintiff, before the compensation received by him from The Morey Mercantile Company was competent (if admissible at all), to consider as a basis upon which to estimate his damages for the period he was incapacitated from work or after he resumed his occupation, to show what his expenses in earning such commissions were.—*Central Coal & Coke Co. v. Hartman,* 111 Fed. 96.

Just previous to his injury plaintiff had been engaged by a new firm. The territory in which he would operate under his contract with this firm was different from that he sold goods in when employed by The Morey Company. The brands of cigars were also different. This left the question of his earnings under his arrangement with his new employers, as compared with those while engaged with The Morey Company, entirely problematical. He would have

to find new customers. His sales might be greater or less, as they would depend on conditions in many respects different from those existing while working for The Morey Company. So that his earnings with The Morey Company were not competent, as a basis upon which to compute his earnings under his contract with the firm by which he was engaged when injured.—*Boston & Albany R. R. v. O'Reilly,* 158 U. S. 334.

Plaintiff resumed work about the first of September subsequent to his injury. There was testimony to the effect that he was lame at this time; that he had to use a cane; that he could not get in and out of a buggy which he used in visiting customers as readily as before, and that he employed a boy to assist him; but there is no testimony as to what he earned under these conditions. For all that appears from the record, he may have earned as much during this period as during a similar period previous to his injury; so that the damages resulting from his inability to labor after he resumed work were entirely a matter of speculation; and as the jury were advised that in estimating his damages they could take into consideration loss of his probable earnings while he was unable to work, and his decreased ability to earn money in the future, without any proper basis upon which to estimate such damages, the court not only erred in instructing the jury on the subject, but also committed error in not giving the instructions requested by the defendant.

The court also instructed the jury that if they found that plaintiff was entitled to recover, they might allow him damages for mental suffering arising from disfigurement of person, if any was proven. Error is assigned on this instruction. There is a decided conflict of the authorities as to whether or not damages for mental suffering of the character

under consideration are recoverable, some courts holding that the mental pain arising from the contemplation of a maimed body and the humiliation of going through life in a crippled condition is too remote to be considered as an element of damage, while others hold to the contrary, upon the theory that as the mind is no less a part of the person than the body, the sufferings of the former which resulted from an injury may be recovered, and, therefore, mental suffering caused by disfigurement as the result of an injury may be compensated by way of damages. No rule for awarding damages for mental suffering, however caused, can be formulated so as to define a certain basis upon which such damages can be estimated. This is especially true with respect to mental suffering resulting from disfigurement. The temperament, walk in life, sex, and the character of the disfigurement, would necessarily have to be taken into consideration in determining the extent of the mental suffering in such cases. Because of these conditions some would be affected more than others. Then, again, jurors called upon to assess damages of this character would be more or less affected in their estimate by their own character, with respect to their sympathetic or non-sympathetic nature; so that damages of this kind, if recoverable in any case, must depend largely upon conjecture, and peculiarities of the persons called upon to assess them. For these reasons, the cases in which such damages should be allowed, if recoverable at all, should be confined to the narrowest possible limits, where it was evident that a claim therefor was meritorious. There may be some cases, although we do not so hold, where damages for mental suffering resulting from disfigurement should be given, as where an injury was caused maliciously, or where the disfigurement was such that the presence of the individ-

ual injured would thereby be rendered offensive. No such conditions are present in the case at bar. It appears that plaintiff's leg was broken; that in healing it has been shortened from between three-eighths of an inch to an inch; that at the time of the trial he limped, but was able to get about by the use of a cane; that his leg was stiffened, but the chances of a practically complete recovery were very good. His injury was not caused by the malice of either of the defendants, and as the disfigurement cannot possibly render his presence objectionable to any person, nor result in making him an object of pity or ridicule, we do not believe, whatever the rule might be with respect to recovery of damages for mental suffering caused by disfigurement, that such a case is made by the plaintiff as to justify any award for damages on that account.

Plaintiff was permitted to call Mr. Whiting and cross-examine him under the act of 1899, p. 178, which provides that a party to any civil action may call the managing agent of any corporation which is a party to the same action, and examine him upon the trial thereof as if under cross-examination. This is assigned as error by the defendant company, upon the ground that the act in question does not contemplate that every agent of a corporation may be so examined, but is limited to a managing agent, and the witness was but the local agent of the defendant company. A construction of the statute is unnecessary, because it clearly appears that whether the plaintiff, by virtue of the statute, had or had not the right to call Mr. Whiting as a witness, the defendant company was not prejudiced by his examination, further than some of the testimony elicited was incompetent; but that is not material to the question being considered. Mr. Whiting, subsequently, was placed upon the stand as a witness for the defendant com-

pany, and the same facts to which he testified when first called were brought out upon his cross-examination.

The defendant company filed a demurrer to the complaint, based upon the grounds that there was a misjoinder of parties and causes of action. This demurrer was overruled, and error is assigned on such ruling. The defendant answered to the merits, and also sought to raise the question of misjoinder by such answer. If there was any merit in the questions raised by the demurrer, they appeared upon the face of the complaint, and by answering to the merits, they have been waived. An objection to a complaint that there is misjoinder of causes of action and parties which, if it possesses any merit, appears on the face of the complaint, can only be raised by demurrer. If overruled, the question is waived by answering to the merits. Nor can it be saved by pleading such misjoinder in connection with an answer on the merits.—*The Sams Automatic Car Coupler Co. v. League,* 25 Colo. 129.

There are other errors assigned on behalf of the defendant company which it is unnecessary to consider. From the questions determined, enough has been said to serve as a guide on a re-trial of the case, in the introduction of testimony and instructions to the jury, so far as all parties are concerned, with respect to those matters disclosed by the present record which affect the rights of the defendants jointly, or the defendant company alone.

We shall now consider those errors assigned on behalf of the city and county of Denver, which are vitally important to that municipality. The court instructed the jury that the latter would not be liable unless it appeared that the "goose-neck" had been in the sidewalk for a sufficient length of time so that the city, through its proper officers, might, in the

exercise of reasonable care, have known of its existence. This was followed by an instruction to the effect that the existence of the "goose-neck" in the sidewalk for three or three and a half months, was a sufficient length of time to constitute constructive notice to the city of its existence. This part of the instruction was erroneous. The obstruction was comparatively small. It was made of ⅜-inch iron pipe; was located near the curb, and extended but a few inches above the sidewalk; and hence, was not of a character to necessarily attract the attention of any official of the city passing along the walk in the vicinity of where it was located. Under these facts the question of whether it had existed there a sufficient length of time to operate as constructive notice to the city should have been left to the determination of the jury. The case is different from *City of Denver v. Hyatt,* 28 Colo. 129. In that case it appeared that the defect in the sidewalk was plainly visible, and had existed for such a length of time that the city was presumed to have notice of its existence.

The court also instructed the jury that it could not find against either of the defendants under the evidence, unless it found against both. This was clearly erroneous, so far as the city was concerned, because if it had not been negligent in ascertaining the existence of the obstruction, or negligent in not removing it, it would not be liable, even though the defendant company might.

There is one further error assigned on the part of the city which should be noticed. Over objection by counsel for the city, plaintiff was permitted to testify as to injuries other than his broken leg. In the notice served on the city (required by § 9, p. 233, Session Laws 1893), the only injury stated was to his leg, and it is contended by counsel that testimony

of his injuries, so far as the city was concerned, should have been limited to those mentioned in the notice. It is claimed by counsel for plaintiff that the question is not preserved in the record. Inasmuch as the determination of this latter question does not affect the reversal of the case, we shall indicate our views on the question raised by counsel for the city, so that they may serve as a guide at another trial.

It has frequently been decided that the service of notice on the city for injuries sustained by reason of a defective sidewalk was a vital condition precedent to the right to maintain an action for damages against the city. Such being the case, the damages recoverable must be limited to those growing out of the injuries stated in such notice to have been received. This limitation, of course, only applies to the city. The matter of notice to the city could not affect the plaintiff's right of action as against the defendant company.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded*

Mr. JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.