## NOTICE TO MUNICIPALITY OF DEFECTIVE SIDEWALK.

[Circuit Court of Cuyahoga County.]

JULIA PAYNE v. CITY OF CLEVELAND.

Decided, December 24, 1903.

*Evidence—As to Notice to City of Defect in Sidewalk—Knowledge of a Policeman the Knowledge of the City, When—Rule of the Police Department as to Observing Defects, Competent.*

1. A recognized rule of the police department, which requires policemen to note and make report, among other things, of "all coal holes left open," is competent as evidence in a suit against the municipality by one who has suffered injury by falling through an open coal hole in the sidewalk.
2. Where it is thus made the duty of a policeman to report a defect, and his attention has been called to a coal hole in the sidewalk with an insecure lid, which had tilted up from the weight of a pedestrian, causing him to fall into the hole, and the owner of the property or some one for him informs the policeman that he is unable to remedy the defect, the knowledge of the policeman becomes the knowledge of the city, and evidence of such knowledge is competent in a suit for damages by one who subsequently fell into the same hole.

MARVIN, J.; HALE, J., and WINCH, J., concur.

Julia Payne brought her action against the city of Cleveland to recover damages for injuries sustained by her from falling into a coal hole in the sidewalk on Pearl street near the corner of Bridge and Pearl streets in said city, by stepping onto the cover of said hole, which thereupon slipped in such wise as to leave said coal hole open. This was on June 25, 1895. The hole was in front of a brick block owned by one Henry Heil. The excavation under the sidewalk was made by said Heil under permission granted for that purpose by the city. The covering over said coal hole was an iron plate, and it is charged in the petition that said hole so covered was at the time of the injury to the plaintiff a public nuisance in that the cover thereto had become and was worn and loose in the rim surrounding it, whereby said cover had become ill-fitting and insecure, and that by reason of the shallowness of the rim around said hole into

which said worn and loose cover was allowed to rest it had become easily liable to displacement when trodden upon, and was therefore highly dangerous and unsafe for persons along said sidewalk unless securely fastened from beneath, and that said cover was and for more than a month prior to the injury to the plaintiff had been wholly unfastened, unguarded and insecure, and that such condition of insecurity was at the time of the accident and for a long time prior thereto well known to said city and its officers, and wholly unknown to said plaintiff.

The defendant answered by a general denial, and further by an allegation that if the plaintiff was injured at the time and place charged in the petition said injury was contributed to by her own negligence.

Upon the trial of the case, at the close of the plaintiff's evidence, the defendant moved for an order directing the jury to return a verdict for the defendant, which was granted. This action of the court is complained of by the plaintiff in error, as well as certain rulings upon the introduction of evidence.

A bill of exceptions is filed here containing all the evidence introduced on the trial. From this it appears that the injury to the plaintiff occurred between three and four o'clock on the afternoon of June 25, 1895; that the sidewalk in front of the Heil building, where this injury occurred, was a broad flagstone walk; that there were five manholes in front of said building opening into coal vaults beneath; that Pearl Street is a principal street of the city, and used very extensively by pedestrians and vehicles; that as the plaintiff was walking along the sidewalk she stepped on the cover of this manhole, which immediately tilted and slipped out of place, whereby she dropped into the coal hole, catching upon her arms on the cover and sidewalk, but was unable to extricate herself and was helped out of this perilous position by two men. Her injuries were very considerable. There is nothing in the evidence tending to show any negligence on the part of Mrs. Payne. The evidence tended to show that, though there was a chain suspended from the under side of this cover, there was no weight attached to such chain. The fact that the cover tilted and slipped by her stepping upon it certainly tended to show that it was in-

secure and in an unsafe condition at the time of the accident, and the fact, which was testified to by witnesses, that another woman fell into this hole under similar circumstances on June 15, 1895, and still another on May 20 of the same year tended to show that this unsafe condition had existed for a considerable time. It is true that the fact of the covering being removed temporarily on each of these days for the purpose of putting in coal or for some other purpose and not immediately secured after being again placed over the hole might not be such negligence in the manner of protecting this sidewalk as would make the city liable, because the city might presume that the weight to be attached to the chain would be immediately so attached; but if the fact was known to the city that these two previous accidents had occurred within so short a time, and if the city was further notified that the owner had not or could not or did not intend to remedy the defect, then we think the city would clearly be liable for any accident resulting from this dangerous condition of the coal hole. But where the injured party was without fault, it is claimed that no notice of such previous accidents or of the fact that the owner did not immediately after each accident properly fasten the cover is shown by the evidence.

It appears by the fifth page of the bill of exceptions that while Mrs. Pauli, a witness for the plaintiff, was being examined, she testified to having fallen into this same hole on or about June 15 of the same year, about ten days before the plaintiff's accident occurred. She stepped onto this same cover, when it slipped and left the hole open so that her foot went into the hole, and she was prevented from falling by catching upon the sidewalk and being helped up by her daughter and another friend; that at the time of her accident a policeman of the city saw her and immediately talked with her about it. She was then asked to state the conversation she had with that policeman. This was objected to by the city and the objection sustained and a proper exception taken. Counsel for the plaintiff then stated that if the witness was permitted to answer he expected her to say that she told the policeman that she had just stepped upon the cover of that coal hole; that the cover was not fas-

tened or secured in any manner; that it tipped up and slipped out of place, and she fell into the coal hole; that thereupon the policeman went into the store in front of which was this coal hole, and a man came out and was shown the coal hole with the cover off, by the policeman, and was told by the policeman that he must fasten or secure it, and the man then told the policeman that he could not fasten or secure it because the fastening was broken. The court then said to the jury, upon request of counsel for the city, that all that this witness had testified to in connection with a policeman should be disregarded by the jury, so that the ruling of the court was that the notice given to the policeman on or about June 15 of the condition of this opening in the sidewalk and the fact that the policeman immediately communicated that condition to some one there connected with the property and that the policeman was then informed that it was claimed by this man that the covering could not be safely fastened because the chain was broken, was wholly incompetent.

Before the evidence to which attention has just been called was offered, there had been offered in evidence on the part of the plaintiff a rule of the police force of the city of Cleveland, and it was conceded by counsel for the defendant at the time that said rule was one of the rules and regulations of the police force of the city of Cleveland, and that it was in force on June 25, 1895. Said rule, speaking of policemen, reads:

"He shall note all street and sidewalk obstructions, all defects therein from which accidents may occur, removing them when practicable and when necessary, and when no light is furnished place a good and sufficient light so that obstructions can be plainly seen; all premises for which temporary permits are granted for building or when openings or excavations are being made and not suffer them to be continued without the proper permits being granted authorizing the same, and shall cause suitable accommodations to be provided for the public travel; all coal holes being left exposed or unsecured, all street lamps not lighted at proper times or too early extinguished, when not clean or not giving sufficient light, all wooden buildings erected contrary to law or any building defectively built or becoming unsafe, or where any noisome, dangerous or unwholesome trade is carried on, and all nuisances or violation

of the laws, ordinances and all other matters relating to the safety, health and convenience of the public or to the interests of the city, and in all cases of complaint by citizens with residence  *   *   *   shall make report thereof.''

To the introduction of this rule the defendant objected and the objection was sustained, to which a proper exception was taken.

As to the introduction of this rule, it is urged, among other things, that no evidenc was offered tending to show that this rule was adopted or approved by the city council of the city of Cleveland, and that the council alone has the power to constitute a police officer an agent of the city for the purpose specified in said rule. It is admitted, however, that the department itself has the authority to prescribe rules for the government of the department and to lay down duties for the different members of the force to perform. It having been admitted that this rule was one of the rules and regulations of the police force of the city of Cleveland in force on the day when the accident to the plaintiff occurred, we think there was no occasion to inquire by whom that rule was adopted. It is a sufficient showing that it was adopted by the proper authority when the admission above referred to was made by the city. We think, therefore, that the court erred in excluding this rule. Its admission would have tended to show that whatever fact came to the knowledge of the policeman was by him reported to some authority that had the power to remedy the difficulty, for surely the presumption is, in the absence of any evidence to the contrary, that the policeman did his duty, and the requirement of the rule that he should make report must mean that he should make report to somebody who had some authority in the matter, otherwise such requirement would be absolutely a vain thing.

As against the argument that the city, if it had notice of what occurred to Mrs. Pauli on June 15, might rely upon the performance by the property owner of the duty imposed upon him of immediately making said covering secure, it seems clear that the fact which the plaintiff offered to show, that either the owner of the building or some person connected with such building notified the policeman that he could not repair it, would be

sufficient to require some action on the part of the city to make this place safe.

Attention is called by the defendant in error to the case of *Chase* v. *Cleveland*, 44 Ohio St., 505. That was a case brought against the city to recover for an injury received by falling upon a slippery sidewalk. The syllabus reads:

"In a suit against a municipal corporation to recover for injuries occasioned by falling upon a slippery sidewalk, allegations in the petition which aver that the defendant is a city of the first class; that the street where the accident occurred is a public highway within the corporate limits; that upon a sidewalk in front of property of a private owner, the city negligently suffered ice and frozen snow to accumulate, and for a number of days to be beaten smooth and slippery, and for that reason dangerous to those passing along it, and to so remain for some days, of which condition the city had or might have informed itself in time to have made the sidewalk safe before the accident, are not sufficient to show negligence."

In the opinion, announced by Judge Spear, page 513, attention is called to the fact that the petition is very indefinite in charging that the dangerous condition of the walk had continued for a number of days. "The term, 'a number of days,' and 'some days' may mean two days, or more. Neither necessarily indicates a greater number than two."

He says, speaking of this allegation as to the length of time, that they are "clearly insufficient to show notice to the city. So that the plaintiff is remitted, as to this essential element, to the allegation that it was possible for the city to have obtained the information. We do not understand that a city is bound at all hazards to have knowledge of defects in sidewalks. Municipal corporations are not insurers of the safety of their public ways, or of the lives and limbs of pedestrians. The law provides that such corporations shall have the care, supervision, and control of the streets, and shall cause them to be kept open and in repair, and free from nuisance. This requires a reasonable vigilance, in view of all the surroundings, and does not exact that which is impracticable. * * * They are not bound to use all possible vigilance in inspection or in obtaining inform-

ation.'' It does not appear that this language in any wise tends to aid the defendant in error here.

The probability of the situation of the street rendered unsafe by snow and ice becoming known to the authorities immediately is, as Judge Spear seems to think, not probable, and he says that to give the city notice of all such unsafe places ''would require a large special force involving enormous expense; * * * Such duties do not naturally fall within the province of the police force.''

This doctrine does not seem inconsistent with the proposition that knowledge of such condition of the sidewalk as was shown in that case would not be knowledge of the city, but only that the police force would not be likely to know of all such conditions of the walk because it is not their province to look for such conditions.

In the case of *Western College* v. *Cleveland,* 12 Ohio St., 375, which was a suit brought by the college against the city to recover for loss sustained to the plaintiff's property by the violence of a mob which was not suppressed by the police, the opinion, by Judge Gholson, is to the effect that the city is not responsible because of the failure on the part of the police force to perform its duty in suppressing a riot. We are unable to see that there is anything in the case which implies that knowledge brought to the police is not knowledge brought to the city.

The case of *Wheeler* v. *Cincinnati,* 19 Ohio St., 19, simply holds that the failure on the part of the city to provide necessary agencies for extinguishing fires does not render the city liable for damages caused by such fires, nor does the negligence of those connected with the fire department render the city so liable.

We are unable to see that this in any wise tends to show that the city is not bound by the knowledge of its police officers. It is not sought here to charge the city for the failure on the part of the police officer to repair this sidewalk, but only to hold the city for its failure to repair the walk when knowledge of its dangerous condition was brought home to the officer whose duty it was, by a rule of the department, to communicate such knowl-

edge to the proper officers; but with this rule, we are inclined to think that the city was bound by the knowledge of the policeman.

In support of this attention is called to the case of *Denver* v. *Dean*, 10 Colo., 375. This was a suit brought by Dean for injuries sustained by stepping upon the covering of a coal hole in the sidewalk in the city of Denver. The chief of police of the city knew of the defect several months before the accident happened and had notified and instructed the tenants to have the defect cured. He had also mentioned it to the policeman stationed on that beat. Upon the trial the court instructed the jury:

"That the knowledge, concerning defects like the one in question, of the police of the city is not actual notice to the corporation; that such knowledge, if gained in pursuance of the officer's duties and appointment, may be the means of knowledge, so as to charge the municipality with constructive notice."

The Supreme Court of Colorado, in passing upon this, says:

"In our judgment both propositions are wrong. Whether a certain matter is in the line of a particular officer's employment, is to be determined by construction of the statute or ordinance prescribing his duties; hence such determination is a question of law. Without discussion, but not without careful examination, we are prepared to hold that the ordinance before us sufficiently charges the chief of police with the care of coal holes and caps, as well as other obstructions, in or upon the sidewalks. Hence the court below should have instructed the jury that, if the officer had personal knowledge of the defective cap, the city should be charged with actual notice."

From this it is evident that the ordinance of the city prescribing the duties of policemen was admitted in evidence, and that the Supreme Court considered that as proper evidence in the case. This, as we think, bears directly upon the question of the admissibility of the rules of the police department in evidence.

In the case of *Rehberg* v. *New York* (*Mayor*), 91 N. Y., 137, it was held that notice to a policeman of an unlawful obstruction in the street was notice to the city.

In the case of *Goodfellow* v. *New York* (*Mayor*), 100 N. Y., 15, where there was an obstruction upon a cross-walk and where

there was an ordinance of the city requiring policemen on duty to inspect cross-walks, and the policemen had inspected, but testified that he observed nothing dangerous, and made no report, it was held that these facts were sufficient to charge the city with notice of the defect.

We, therefore, reach the conclusion that the court erred in excluding the rule of the police force offered in evidence; that it erred in excluding testimony as to what was said to and by the policeman who knew of the injury to Mrs. Pauli, and in directing the jury to return a verdict for the defendant, and for these errors the judgment of the court of common pleas is reversed and the case is remanded to that court for a new trial.

*F. A. Beecher, Kerruish, Chapman & Kerruish,* for plaintiff in error.

*Newton D. Baker et al,* for defendant in error.