No. 13,749.

CITY OF ALAMOSA *v.* JOHNSON.
(60 P. [2d] 1087)

Decided June 29, 1936. Rehearing denied September 21, 1936.

Mr. W. W. PLATT, for plaintiff in error.

Mr. GEORGE M. CORLETT, Mr. CLAUDE W. CORLETT, Mr. CHARLES R. CORLETT, Mr. M. T. HANCOCK, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

IN a personal injury action, Julia E. Johnson recovered judgment for $1,139.65 against City of Alamosa. The city seeks a reversal of the judgment.

Over the Rio Grande river, connecting what is referred to as East Alamosa with the city of Alamosa, is a bridge, over which all persons going from East Alamosa to the city must pass. It has a walk for pedestrians along the southerly side. At the west end of the bridge is a timber header measuring eight inches by eight inches, off of which it is necessary for pedestrians city-bound to step down to the city sidewalk, which at that place is seven or eight inches lower than the bridge. It is a dirt side-

walk, and at the place in question it has a ten per cent slope toward the city.

On December 27, 1932, at about 10 o'clock in the morning the plaintiff was going from her home in East Alamosa to the city, where her husband was employed. She crossed the bridge and stepped down from the header to the sloping sidewalk, which was covered with a sheet of "slick," "rough," "bumpy" ice about half an inch thick and in extent about four feet by four feet. She slipped on the ice and fell, breaking her right leg below the knee.

There had been a general condition of ice and snow on the city streets and sidewalks for some time—one witness said ever since the first of December. Such condition existed for at least two or three weeks up to and including the 27th. As is usual in Alamosa at that time of the year, much snow fell during the month and the weather was cold. The minimum temperature ranged from 11 to 25 degrees below zero and the maximum from 20 to 37 degrees above zero. The sun would melt the snow during the day and pedestrians would tramp it down. At night it would freeze and form ice, and, because of the footprints, the ice was rough. Efforts were made at other places in the city to remove snow and ice and otherwise to lessen the danger, but the uncontradicted evidence is to the effect that nothing whatever was done, or even attempted, at any time to remedy the condition or lessen the danger at the place in question. The city street commissioner testified that he had done no work at this place, as the walk sloped to the southwest and was thus exposed to the sun and would melt more quickly there than elsewhere, and that he worked at other places where conditions were more serious. Cinders had been put on the ice at other places. One witness said that there were cinders "on all other crossings except this one."

 1. In his brief, counsel for the city says: "We admit that the walk upon which plaintiff fell was in a dangerous and unsafe condition." He contends, however, that the condition was due to natural causes, without

municipal intervention, and that it is practically impossible for a city with the rigorous winter climate of Alamosa to keep its streets and sidewalks free from snow and ice.

The fact that there is ice on a sidewalk, due to natural rather than artificial causes, and that it is slippery, unless there is a bunch or projection or a pile of it that makes the walk uneven and likely to cause stumbling, does not ordinarily indicate such negligence on the part of a municipality as to make it liable. *City and County of Denver v. Willson*, 81 Colo. 134, 254 Pac. 153. A municipality is not required to do the impossible, or what is practically impossible, but it is required to exercise ordinary care to keep its sidewalks in a reasonably safe condition for travel, and a failure so to do is negligence. *City of Boulder v. Niles*, 9 Colo. 415, 12 Pac. 632; *City and County of Denver v. Magivney*, 44 Colo. 157, 96 Pac. 1002; *City of Denver v. Cochran*, 17 Colo. App. 72, 67 Pac. 23; *City and County of Denver v. Rhodes*, 24 Colo. App. 114, 131 Pac. 786. And what is ordinary care in a given case "must be determined by the locality, climate, weather conditions, and other circumstances." 43 C. J., p. 1020.

The presence of the snow at the place in question, and the formation of ice by the melting of the snow and the subsequent freezing, may be said to be due to natural causes. But there was a step-down of seven or eight inches from the header to the sidewalk, which sloped and was covered with slippery ice; and while this may not be a defect in bridge or street construction, it, taken in connection with the sloping, icy sidewalk upon which plaintiff was obliged to step, created a condition of peculiar danger to pedestrians.

In the circumstances, it was a jury question whether the city's conceded failure to take any step whatever to obviate or lessen the danger was or was not the exercise of ordinary care. The jury found that it was not, and we would not be justified in setting aside that finding.

2. The city offered to prove, as bearing upon the

question of the exercise of ordinary care, the 1932 appropriation for cleaning the sidewalks, what equipment was available for that purpose, and the mill levy for 1932. The court sustained an objection to the offer—we think properly so. In the Cochran case, supra, it was said: "In *Conroy [Carney] et al. v. Village of Marseilles et al.,* 136 Ill. 401, it was urged that the village was not liable for damages on account of personal injuries sustained through a defective bridge because it had no funds wherewith to repair the bridge. The court held as the village kept the bridge open for travel it was its duty to repair it, and 'It could not be heard in a suit for damages resulting from its want of discharge of duty to say that it had no funds with which to repair.' "

■ 3. The city complains of the court's refusal to give the following tendered instruction on contributory negligence: "You are instructed that if you should find and believe from a preponderance of the evidence that the plaintiff's own negligence or lack of due care contributed in any degree to the injuries which she may have sustained, then your verdict must be for the defendant."

The requested instruction seems to assume that plaintiff was negligent, and submitted to the jury the sole question whether her negligence contributed to her injuries. For this reason alone the court was justified in refusing to give it. Moreover, in the court's instruction No. 13 we find this: "Upon persons using the sidewalks the duty imposed is that of ordinary care. Under conditions of increased danger, however, there is imposed upon such persons a duty of increased care, commensurate with the increased danger, if any." And repeatedly in other instructions given it is stated, as an essential to a recovery, that plaintiff must have been "without fault or want of ordinary care on her part"; that "plaintiff was in the exercise of ordinary care herself"; "that plaintiff, while exercising ordinary care," etc. By their verdict, the jury necessarily found that plaintiff was free from contributory negligence.

The court did not err in refusing to give the requested instruction.

We find no error in the record.

The judgment is affirmed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, and MR. JUSTICE HILLIARD concur.