No. 14,399...

Denver and Salt Lake Railway Company *v.* Granier.
(89 P. [2d] 245)

Decided March 27, 1939.

Messrs. Smith, Brock, Akolt & Campbell, Mr. J. H. Shepherd, for plaintiff in error.

Mr. A. X. Erickson, Mr. Don B. Oliver, for defendant in error.

*In Department.*

Mr. Justice Bock delivered the opinion of the court.

Defendant in error Granier sued plaintiff in error railway company to recover damages for personal injuries occasioned through the latter's alleged negligence, and obtained a verdict and judgment in the sum of $15,000, which judgment we are asked to reverse. Reference will be made to the parties as plaintiff and defendant, as they appeared in the court below.

Of the several acts of negligence alleged in the complaint only one need here be considered. The sole issue of negligence submitted to the jury by the court's instructions was that, ''The defendant operated its aforesaid engine negligently and carelessly onto and over the plaintiff without any warning or signal of the approach of the aforesaid engine.''

Defendant in its answer denied that it was guilty of negligence, and pleaded assumption of risk and that the accident and injuries ''were the result of the sole negligence of the plaintiff.''

Defendant bases its assignment of errors here on the court's denial of its motion, interposed at the close of the evidence, for a directed verdict.

It appears from the record that the accident occurred on the morning of January 8, 1937, while plaintiff was employed by defendant as a member of a section crew at or near Utah Junction, located about three and one-half miles north of Denver, in Adams county. Utah Junction is the freight terminal of the defendant company. There its shops are maintained, and there its

yards for the making up and breaking up of trains, and the interchange of freight cars with other railroads are located.

The evidence reveals that plaintiff is 52 years of age; that under the mortality table he has an expectancy of life of 19.49 years; that he had for many years been employed as a section hand; that he had been employed in the yards of the Union Pacific Railroad Company for a period of 15 years, and had worked for defendant approximately seven months at the time of his injury. One part of the section crew, composed of about six men, was engaged in replacing ties on track 4, and while plaintiff and one George Yaeger were engaged in similar work on track 7 a switch engine moving eastward went onto track 7, passed plaintiff and continued a distance of approximately 80 feet. The engineer at that time saw plaintiff and his fellow workman. Plaintiff was engaged in placing a tieplate under a rail and above one of the new ties, using a maul to drive the plate between the tie and rail. As the engine backed west at a slow rate of speed plaintiff was struck by the locomotive's rear footboard, while his back was turned and as he was in a stooped position. His fellow employee, Yaeger, was outside of the track, unengaged, and in a position to keep a lookout for plaintiff, whose work required his entire energy and attention.

Defendant bases its argument on the assignment of errors: That the court erred in denying its motion for a directed verdict, based upon the grounds: First, that there was no evidence of negligence on its part; second, that plaintiff assumed the risk; third, on the denial of its motion for a new trial, based upon the ground, among others, that the verdict was excessive.

The asserted negligence was suported by evidence introduced under two theories: one, Yaeger's failure to warn plaintiff of the approach of the engine; and, second, failure of the engine crew to ring the locomotive bell,

thereby neglecting to warn plaintiff of the approach of the engine.

■■ ■ Our discussion is confined to the second theory. "Every fact necessary to support the verdict will be presumed to have been found by the jury in favor of the prevailing party." 4 C. J. 772. The evidence as to failure to warn, in not ringing the bell, is in conflict. That much is admitted in the record. Was this failure, if supported by evidence, such negligence as would make the defendant liable? We think it was. The general superintendent of defendant testified that, "When the engine starts moving the bell should be rung, to warn the switchmen and others around there that it is moving." There was such a rule in effect during the entire period of time that the general superintendent had had supervision over operations, commencing in 1926, and extending to and including the time of the injury involved here. We, therefore, have a rule of the defendant company which was violated, and facts from which the jury could properly find that failure to obey it was the proximate cause of plaintiff's injury. Moreover, this accident did not occur on a straight track; it was on a curve. The degree of curvature was in dispute. Both engineer and fireman testified that in their backup, when the plaintiff was struck, they did not see him on the track.

Counsel for defendant urge that, "A railroad company in the operation of its trains, and particularly in the operation of its switch engines in the yards, does not owe any duty to the section laborers to keep a lookout for them, but the section laborers are required to rely upon their own watchfulness, and keep out of the way of trains and switch engines." In support of this proposition they cite *Aerkfetz v. Humphreys,* 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758; *Chesapeake & Ohio R. Co. v. Nixon,* 271 U. S. 218, 46 Sup. Ct. 495, 70 L. Ed. 914; *Toledo & St. L. & W. R. Co. v. Allen,* 276 U. S. 165, 48 Sup. Ct. 215, 72 L. Ed. 513.

Defendant places special reliance upon the Aerkfetz

case, decided in 1892, many years prior to the enactment of the Federal Employers' Liability Act, and particularly upon the following language relating to the ringing of bells: "The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion."

The facts in that case were somewhat similar to those presented in the case before us, with this important difference: there the tracks were in a direct line east and west, with nothing to obstruct the view in either direction, while in the instant case we have a curvature, which affected the view of the engine crew to where plaintiff was engaged in placing a tieplate under a rail; also a longstanding rule to warn by ringing the engine bell, which is absent in the Aerkfetz case. In that case the jury returned a verdict in favor of the railroad company. The reviewing court, therefore, under the rule above quoted, presumed every fact necessary to support the verdict; also holding that the facts disclosed no negligence on the part of the defendant, but if it was negligent, plaintiff was guilty of contributory negligence. In that case contributory negligence was a defense, but under the Federal Employers' Liability Act it cannot be a defense in the case at bar. Did the court in the Aerkfetz case, in its language concerning the ringing of bells by engine crews in a railroad yard, frame an invariable standard of behavior which amounted to a rule of law? We think not.

In *Baltimore & Ohio R. Co. v. Goodman,* 275 U. S. 66, 48 Sup. Ct. 24, 72 L. Ed. 167, the Supreme Court of the United States framed a rule of conduct, subsequently claimed as a rule of law, when it said: "When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must

stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look.''

This same standard of conduct was before the court in *Pokora v. Wabash Railway Co.*, 292 U. S. 98 (54 Sup. Ct. 580, 78 L. Ed. 1149), wherein the court, reciting the facts, and speaking through Mr. Justice Cardozo, said at pages 104-106:

''Standards of prudent conduct are declared at times by courts, but they are taken over from the facts of life. * * *

''Illustrations such as these bear witness to the need for caution in framing standards of behavior that amount to rules of law. * * * The opinion in Goodman's case has been a source of confusion in the federal courts to the extent that it imposes a standard for application by the judge, and has had only wavering support in the courts of the states. We limit it accordingly.''

The judgment was reversed, with instructions to submit to the jury the issue of contributory negligence, involving Pokora's failure to get out of his vehicle.

So in the instant case, the trial court properly submitted to the jury the issue of negligence on the part of defendant's agents in not giving warning by ringing the bell, and the jury decided that issue against the defendant.

The recital of the facts in the Aerkfetz case is brief. We already have called attention in what respect those facts differ from some of the facts in the case before us. It does not seem just and sound reasoning that plaintiff, with all the instincts of self-preservation, being in a stooped position, with his back toward the engine, intent upon his work, in view of all the circumstances, should not be permitted to rely upon a long-established rule of the railway company to give him warning by ringing the bell, and it was a proper question, touching negligence, for the determination of the jury. A long-standing rule to warn by ringing an engine bell should have some place

in the facts of life as disclosed in the instant case, and should not be disregarded in considering prudent conduct on the part of plaintiff or defendant.

In *Chesapeake & Ohio Railroad Co. v. Nixon, supra,* the facts were entirely different on the issue of negligence from those in the case at bar; likewise in the case of *Toledo & St. L. & W. R. Co. v. Allen, supra.*

 Defendant further contends that, aside from any negligence on its part, plaintiff assumed the risk involved as a member of the section crew, and cites numerous cases which, it argues, sustain its position. In none of these cases do we have an express rule of the railroad company, in force for a long time, requiring, under the circumstances presented in this case, a ringing of the bell as a signal warning.

In the case of *Denver & Salt Lake Railway Co. v. Lombardi,* 87 Colo. 311, 287 Pac. 648, the doctrine of assumption of risk was sought to be applied in a case growing out of the violation of the Federal Employers' Liability Act. While the facts are somewhat different, the principle involved is the same. In that case we referred to the case of *Chesapeake & Ohio Railroad Co. v. Nixon, supra,* and said: "This case is based upon the proposition that the railroad owed no duty to the section foreman to look out for and warn of impending danger. Of course, where there is no duty to perform there can be no negligence in failing to perform. * * * Here a duty to warn was violated." So in the instant case, a duty to warn was violated by the defendant, a duty upon the performance of which plaintiff had a right to rely, and which, under the circumstances in this case, he did not know would not be performed.

In the Lombardi case we quoted the general rule on the assumption of risk, as found in *Delaware, Lackawanna & Western Railroad Co. v. Koske,* 279 U. S. 7, 11, 49 Sup. Ct. 202, 73 L. Ed. 234, as follows: "The employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the

extraordinary risks and those due to negligence of his employer and fellow employees.''

Under the facts involved here, it might be said that plaintiff assumed the ordinary risks of a section hand, as related to the operation of a switch engine, and had he fully known that the engine crew would be negligent in not giving him any warning by ringing the bell, he probably would be held to have assumed that risk; but no such contention is here made. There is no evidence that plaintiff knew the engine crew would be, or customarily was, negligent in failing to give a warning signal by ringing the bell, and he cannot, therefore, be said to have assumed the risk incident to such negligence. In this case we have an express rule requiring the giving of warning, under the circumstances, by ringing a bell, consequently the risk here involved is not one which, under the evidence, the plaintiff assumed.

█ The trial court, in Instruction No. 7, properly instructed the jury on the question of the assumption of risk. No exceptions were saved by defendant to any of the instructions given. In support of this phase of the law, as involved under the Federal Employers' Liability Act, we quote with approval the following from *Reed v. Director General of Railroads*, 258 U. S. 92, 66 L. Ed. 480, 42 Sup. Ct. 191: ''In actions under the Federal Act the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant which the injured party could not have foreseen or expected is the sole, direct and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad while engaging in Interstate Commerce shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers.''

██ Counsel for defendant assert that the verdict was excessive. We cannot agree. The evidence discloses that plaintiff was in the hospital approximately two

months. His injury is permanent; his pain and suffering are practically constant. There is nothing in the record from which we may presume that there was any influence of passion or prejudice. "Passion and prejudice will not be presumed to have influenced the minds of the jurors." 4 C. J. 774. The trial court, hearing all of the testimony, had an opportunity to exercise its discretion in ruling on the motion for a new trial and it rejected this contention.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE FRANCIS E. BOUCK concur.