170

## No. 14,894.

### CITY AND COUNTY OF DENVER *v.* CATON.

(114 P. [2d] 553)

Decided June 2, 1941.   Rehearing denied June 23, 1941.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, Mr. WAYNE D. WILLIAMS, for plaintiff in error.

Mr. FRED S. CALDWELL, for defendant in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

DELLA CATON, defendant in error, had judgment in the court below against plaintiff in error, the City and County of Denver, for injuries sustained by her when she fell on an icy crosswalk at the intersection of 24th and Stout streets January 15, 1939. The city is here seeking a reversal of the judgment. Errors assigned are predicated upon the grounds argued in the city's brief: (1) That it did not appear from a preponderance of the evidence that defendant had notice of the defect alleged to have been the cause of plaintiff's injuries for a sufficient period of time prior to the accident to be chargeable therewith; (2) that the crosswalk obstruction complained of did not constitute such an unusual or dangerous obstruction as to charge the defendant with actionable negligence; (3) that defendant in error failed to sustain the burden of proof in respect to her fall being the result of the icy obstruction in question; (4) that the court erred in refusing to give instruction No. 1 tendered by plaintiff in error.

The accident occurred at about six-thirty o'clock a.m., January 15, 1939, when it still was very dark, and it appears that there was no street light in the immediate vicinity. The place was "pretty slick, and it was a high place," consisting of ridges of ice sloping sharply. No evidence was offered by the city concerning the con-

dition of the crosswalk, the obstructions or the effect upon the crosswalk of two snowstorms, the first occurring January 8, and the second January 12. It may be assumed that these facts were solely within the knowledge of the city, and its failure, under the circumstances, to offer evidence concerning them may very well permit the presumption that had any been presented, it would have been adverse to its contentions. That plaintiff had no previous knowledge of the physical conditions as they existed at the time of the accident is clear.

In support of its contention of nonliability, the city cites the first clause of section 1802, page 1024, 43 Corpus Juris. We quote the entire sentence as follows: "A municipality is not held to as strict accountability for permitting ice and snow to accumulate on a crosswalk as on a sidewalk, but it must exercise reasonable or ordinary care to keep its crosswalks in a reasonably safe condition, and what amounts to such care will depend on the circumstances of each case, more care being required where the danger is great than where it is slight." Conceding this to be a correct statement of the applicable law, we are primarily concerned with the conclusion to be drawn from the facts and circumstances in the case, not as they appear to us, but as they are presumed to have been found by the jury in returning its verdict in favor of plaintiff. *Denver & Salt Lake Ry. Co. v. Granier,* 104 Colo. 131, 89 P. (2d) 245. In the case of *Denver v. Dean,* 10 Colo. 375, 378, 16 Pac. 30, we held that one way in which a municipal corporation is charged with constructive notice is where the exercise of ordinary care on its part involves the anticipation of defects that are the natural and legitimate result of use and climatic influences. See, also, *Denver v. Hyatt,* 28 Colo. 129, 63 Pac. 403. Counsel for defendant in error correctly contends that under this statement the evidence was sufficient to authorize the submission of the issue of constructive notice to the jury for its determination. By the giving of instruction No. 7 the question was

properly submitted. That it was an issue for a jury is clear. *Boulder v. Niles,* 9 Colo. 415, 12 Pac. 632; *Alamosa v. Johnson,* 99 Colo. 134, 60 P. (2d) 1087; *Higgins v. Boulder,* 105 Colo. 395, 98 P. (2d) 996. Questions of preponderance of evidence, burden of proof, and whether the obstruction was dangerous, are matters to be determined by a jury, not by us; consequently defendant's contention based upon the first three grounds must be overruled.

█ The fourth ground is founded upon the proposition that the trial court committed error in refusing the city's tendered instruction No. 1, which reads as follows: "The court instructs the jury that a pedestrian in traversing over the crosswalks is charged with the duty of using ordinary care in traversing thereon, and under conditions ·of increased danger there is imposed a duty of increased care." In support of their contention counsel for the city cite the case of *Alamosa v. Johnson, supra.* The vice in the tendered instruction arises from the assumption therein that there were conditions of increased danger. In the Alamosa case we called attention to the following language appearing in one of the instructions given by the court in that case: "Under conditions of increased danger, however, there is imposed upon such persons a duty of increased care, commensurate with the increased danger, if any." We are in accord with this statement. If the tendered instruction here under consideration had been qualified by similar language, a proper issue would thereby be submitted to the jury, leaving for its determination the question whether there was present any increased danger calling for increased care on the part of plaintiff. In our opinion, the trial court properly refused to give the tendered instruction.

The record disclosing no error, the judgment is affirmed.

MR. JUSTICE BAKKE dissents.

Mr. Justice Bakke dissenting.

I respectfully dissent. The court's opinion is based largely on the proposition that this is just another jury case. It quotes seven words from the evidence, apparently as indicating that was enough to take the case to the jury, and then proceeds to say that the city failed to offer any evidence and predicates a presumption on that. That appears to me to be shifting the burden to the defendant in a negligence case.

The record discloses that Mrs. Caton, who lived at 2550 Stout street, was employed as a pastry cook in a restaurant owned by Martin Pappas. The restaurant was located just a few blocks from her place of residence, and she walked to and from work. On January 15, 1939, Pappas went to her home "To take him [her] to work" about 5:30 in the morning when it was still "very dark." When Mrs. Caton reached the intersection of 24th and Stout streets she stepped off the curb to go over the crosswalk. "And just before I got to the center of the street, it seemed to be, oh, just rough, and I slipped and both feet went up and I went down on my right hip, and he [Pappas] helped me up on my feet, and I stood there, and when he helped me up I began getting sick, and I said, 'I can't go on.'" She was taken home, and later to a hospital where it was discovered she was badly injured, in that "both pubic rami on her right side were fractured and the head of the femur of her right leg was driven through the floor of the acetabulum." As a result of her injuries she allegedly is crippled for life. She was forty-nine years of age at the time of the accident and resided with her ten-year old daughter.

Pappas, the only eye-witness to the accident (other than Mrs. Caton), testified that Mrs. Caton was walking about two steps ahead of him, and that she fell when about nine feet out from the curb. "It was all ice, and where the cars passing, you know, it was very icy, but

I never know how bad it was before." He went over the same crosswalk on his way to Mrs. Caton's home, but did not notice the icy condition at that time. He further testified that he returned later with Mrs. Caton's sister to the place where Mrs. Caton had fallen and that "still the place was slick. I could see the scratches" from her heels. "The place was all pretty slick, and it was a high place, but you know, there is a lot of ice there; how much just exactly I don't know. * * * It was more on this side of the street than it was on the other side. * * * She don't fall in the tracks of the automobiles; she fall before the tracks of the automobiles." On cross-examination, Mrs. Caton testified that when she stepped off the curbing she noticed ice and snow on the crosswalk, but did not particularly look for, nor observe, any when she was walking along.

Other witnesses testified that the icy ridge was about two, or two and one-half inches high, but that most of the ice between the ridges had been dissipated by the traffic.

The United States weather report for the week preceding was as follows:

|        |         | Temperature |               |
| ------ | ------- | ------- | ------------- |
| Date   | Maximum | Minimum | Snow fall     |
| "Jan. 9 | 36     | 23      | 6.5           |
| " 10   | 38      | 14      | None          |
| " 11   | 43      | 16      | None          |
| " 12   | 36      | 21      | trace         |
| " 13   | 37      | 19      | 2 inches      |
| " 14   | 35      | 11      | 3/10 of an inch |
| " 15   | 34      | 8       | None."        |

As will be noticed the heavy snowfall of 6½ inches occurred a week preceding the accident, and that there was a maximum temperature of 43 degrees on January 11th; two inches of snow on the 13th, and 3/10 inches on the 14th, so that it was snowing up until the evening before the accident.

The assignments of error are all included in the proposition that the evidence of negligence on the part of the city was insufficient to justify the submission of the case to the jury, and that the motion on behalf of the city for a directed verdict should have been sustained.

I am of the opinion that the motion should have been sustained.

It may be stated at the outset that practically all, if not all, of the cases relied upon to sustain the judgment are "sidewalk" cases, i.e., those cases in which recovery was allowed for injuries sustained in falls on sidewalks rather than in crosswalks or streets. Counsel proceeds on the theory that there is no distinction between "sidewalk" cases and "crosswalk" cases, and, as a basis for his theory, he adopts the case of *City of Denver v. Dunsmore,* 7 Colo. 328, 3 Pac. 705, wherein the words "avenues of travel" were used. I admit that those words are broad enough to cover "crosswalks," but as used in that instance they cannot be accepted as a premise on which to predicate an argument in the case at bar. In that case recovery was allowed for injury sustained by a man whose wagon fell through a defective bridge.

The rule applicable, as stated in Corpus Juris, is: "A municipality is not held to as strict accountability for permitting ice and snow to accumulate on a crosswalk as on a sidewalk." 43 C.J. 1024. There are certain exceptions to this where the city permits "ridges and hills" to form and remain for an unreasonable length of time. "But it is not every ridge or lump of ice that will render a municipality liable; upon a crosswalk where horses, vehicles, and people pass and repass when the snow or ice is soft, lumps or ridges are necessarily formed, which will harden when frozen, and for which the municipality will not be liable." 43 C.J. 1025, §1802. McQuillan on Municipal Corporations, §2794 (1913 ed.).

That this rule is well recognized see 32 A.L.R. 1284, 39 L.R.A. 1167, and Ann. Cases 1913 C-1066.

All of the authorities agree that a mere slippery or icy condition on a street gives rise to no cause of action, but that there must be an obstruction, lump, rut, hole or ridge formed by the ice and snow, sometimes in connection with defect in construction, or from leaky hydrants, or similar conditions, and then liability attaches only if the city is aware of the condition, or if the condition has existed for such a length of time that the city would be charged with constructive notice.

In this connection, I observe that the complaint escaped being demurrable — I think it was — by reciting that a ridge of ice two inches high had formed, "and constituted a dangerous obstruction thereon." But as has already been noted, neither Mrs. Caton or Pappas testified that she stumbled or tripped over the "obstruction." I think candor forces the conclusion that she slipped and fell on the ice between the curb and the traffic ruts in the snow, under weather conditions that were normal at the time.

But assuming there was an obstruction which caused her to fall, I think there was no such showing of constructive notice as to entitle the question to be submitted to the jury. There is nothing in the record to indicate that the "obstruction" was a remnant of the storm of January 9th. While the intersection at 24th and Stout streets is not one of the busiest corners in Denver, there is a lot of motor vehicle and pedestrian traffic there, and with the relatively high temperatures above freezing during the days from the 9th to the 13th of January, the effects of the first storm must have been dissipated. This being true, the "obstruction" was the result of the storm occurring on the 13th and 14th, and no one would contend that the city must keep its streets and crosswalks completely free from ice and snow when a storm is in progress. The temperature was above freezing during the day of the 14th, so the "obstruction" must have been formed on the night of the 14th when the temperature dropped to eight degrees. In my read-

ing of the cases on the subject, I do not find any where the city was charged with constructive notice under circumstances approximating this situation. 43 C.J. 1026, note (b).

There seems to be only one case in this jurisdiction where recovery was allowed for injury on a crosswalk caused by falling on ice. That is the case of *Denver v. Cochran,* 17 Colo. App. 72, 67 Pac. 23. But in that case it will be noted that the dangerous condition had existed for several weeks, the city having actual notice, and could have by the exercise of reasonable care, remedied the situation. The court said: "This finding brought the case within the law requiring the city to maintain the crossing in a reasonably safe condition." On the other hand, the same court held, where there was no notice, as follows: "The city had no actual notice of the existence of the defect. None of its officers had been told of it, nor was it made to appear that any of them had acquired information about it. No evidence was given to show that the defect had existed for any length of time whereby knowledge could be presumed to have been brought home to the city. Nobody seems to have known about it, and if the hole was there before the day of the accident, it is probable the defect had not existed *more than two or three days."* (Italics are ours.) *Denver v. Saulcey,* 5 Colo. App. 420, 38 Pac. 1098.

Defendant in error relies strongly on the recent case of *Alamosa v. Johnson,* 99 Colo. 134, 60 P. (2d) 1087. In that instance, it was "an icy sidewalk upon which plaintiff was obliged to step," and the city had actual notice of the dangerous condition.

I think defendant in error failed to show any violation of duty which the law imposes upon a municipality under a factual situation as herein disclosed. *O'Donnell v. City of Butte,* 65 Mont. 463, 211 Pac. 190.