No. 15,137.

CITY OF STERLING v. ANCIAUX.
(149 P. [2d] 174)

Decided May 15, 1944.

Mr. RAYMOND M. SANDHOUSE, for plaintiff in error.

Messrs. REDMOND & DREFKE, for defendant in error.

*In Department.*

MR. JUSTICE JACKSON delivered the opinion of the court.

MRS. ANCIAUX obtained judgment for $700 against the city of Sterling for damages for personal injuries, resulting, as she alleged, from its negligence. The city comes here specifying as errors, among others, that the trial court erred in not granting its motion for a nonsuit or for a directed verdict, for the reason that plaintiff (a), failed to show that her injuries arose from the negligence or want of care of the city and, (b), the evidence showed that her injuries were attributable to her own negligence.

Plaintiff's injuries occurred when she slipped on ice that had formed on a ramp which was part of a crosswalk at the southeast corner of Third and Main streets in the city. Counsel for defendant aptly describes the situation as follows:

"The streets in the business district of Sterling are asphalt bounded by six-inch curbs except at the intersections where concrete ramps forming an arc around the corners extend into the street. In effect these ramps are extensions of the sidewalks, formed of the same material as the sidewalks, providing in a space of six feet a gradual descent in the pedestrian way from the

level of the sidewalk to the street level. Drains are provided at each end and in the center of the arc of these ramps, and it is admitted in this case that the ramps are in no wise hazardous or dangerous.

"Winter and summer the streets are cleared of debris by means of a street flusher of standard design which forces water to the street under pressure, the force of the water carrying the debris from the street into the gutters. In winter these cleaning operations are confined to days when temperature is above freezing; or if it is considered possible that there may be danger of freezing, street maintenance men follow the flusher to sweep the water away and to apply salt."

The maximum temperature on the day of the accident, February 8, 1941, was forty-four degrees and the minimum fourteen degrees; or, stated another way, the temperature never rose more than twelve degrees above nor fell more than eighteen degrees below the freezing point. The weather had been clear. There was no snow on the streets and the morning was sunny. After ten o'clock, when the temperature had risen above thirty-two degrees, one of the regular employees of the city began using the flusher to clean the paved portion of the streets. About noon his machine passed the ramp on the southeast corner of Third and Main, which is shaded by the I. & M. Building. "Here," to use the words of counsel for the city, "the flusher, even though the pressure was reduced in passing, threw water up the ramp which invaded the sidewalk to a distance of about two feet at one place, and although the water drained back into the drains the remaining moisture permitted a thin film of ice to form on the ramp and sidewalk where the water had been." Within a short time thereafter several people had slipped and fallen on the icy area, Mrs. Anciaux being the only one whose testimony showed she was coming from the north across Main street to the I. & M. Building corner. Her testimony disclosed that she first noticed the water on the street, but

continued on her way. When she reached the area shaded by the I. & M. Building, she noticed that the street was still wet. Both her feet suddenly slipped, she fell, and suffered the injuries of which she complains. A man driving nearby, after seeing her fall, immediately parked his car and, hurrying to her assistance, also slipped and fell.

It is disclosed by the record that city officials took immediate steps, after hearing of the accident, to remove the ice, and counsel takes the position that that absolved the city from liability. He cites as authority cases based on the principle of constructive notice: *The Mars,* 9 F. (2d) 183; *Armour & Co. v. Harcrow,* 217 Fed. 224; *Cole v. German S. & L. Society,* 124 Fed. 113, 63 L.R.A. 416. We have held that after a heavy snowfall a municipality may be allowed a reasonable time in which to remedy a dangerous condition that has arisen therefrom. *Denver v. Willson,* 81 Colo. 134, 254 Pac. 153. But we also have held that the question of constructive notice is one for the jury under proper instructions. *Denver v. Caton,* 108 Colo. 170, 114 P. (2d) 553; *Alamosa v. Johnson,* 99 Colo. 134, 60 P. (2d) 1087.

The case at bar, however, differs from most Colorado cases involving injuries caused by icy sidewalks or crosswalks, in that the dangerous condition did not arise exclusively from the forces of nature, being partly artificially created by the city's employee. Nevertheless, its counsel contends it is not liable; that negligence could not be attributed to it, even admitting the intervention of the act of its employee, because of the unexpected nature of the phenomenon, and he cites *Snyder v. Colorado Springs, etc., Ry. Co.,* 36 Colo. 288, 85 Pac. 686, in which we quoted with approval from *Stone v. Boston & Albany R. R. Co.,* 171 Mass. 536, 51 N.E. 1, as follows: "One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what

is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. * * * *Burlington etc. R. R. Co. v. Budin, supra* [6 Colo. App. 275]." But in the Snyder case defendant railroad company was relieved from liability to a passenger who had suffered injuries occasioned by being thrown from the car by a fellow passenger. The city's counsel also quotes from *Stout v. Denver Park & Amusement Co.,* 87 Colo. 294, 287 Pac. 650, where we affirmed the judgment of the lower court in directing a verdict in favor of the park company. In that case plaintiff testified that while he was riding in a roller coaster he was struck in the temple with some article, and was rendered unconscious by the blow. It was not shown that the object which struck him was under the control of the defendant. His injuries, as we stated the evidence disclosed, "were occasioned by an independent, efficient cause which could not reasonably have been anticipated and avoided by the defendant and without which the accident would not have occurred." With this statement as a basis, counsel argues that "The source of the icy condition in this case is as uncertain and mysterious as the source of the blow in the Stout case." We cannot agree with his contention. The water from which the ice was formed was applied by the city's employee to a street surface that was so cold that the water became frozen, regardless of the fact that the temperature of the air may have been above the freezing point.

We conclude that here the negligence attributable to the city was not the failure to remove a menace for which it was not responsible, but resulted from the acts of its employee which were a principal factor in creating the dangerous condition.

▇ The contention of the city's counsel, that plaintiff was guilty of contributory negligence, is epitomized in the following sentence. "If plaintiff had slipped and fallen at any place where the flusher had applied water —on the street, on the ramp, on the sidewalk—assum-

ing there had been water alone in all these places and no ice at all, she could not have recovered. The mere presence of ice gives her no greater claim." This contention is sufficiently answered by the evidence of the city's employees, who testified that they used the flusher only at those times when they thought there was no danger of ice forming; otherwise, men followed the flusher to render innocuous any ice that might have formed. Plaintiff, under the evidence introduced on behalf of the city, had no reason to expect she would encounter anything more than a wet pavement. It was the element of the presence of ice that caused the trial judge properly to refuse to take the case from the jury.

We have carefully examined the record, including the instructions given to the jury and those tendered and refused, and are of the opinion that the trial judge committed no prejudicial error by his rulings which are specified as grounds for reversal.

Judgment affirmed.

MR. CHIEF JUSTICE YOUNG and MR. JUSTICE HILLIARD concur.